Kellogg *v.* Rand.

---

## KELLOGG *vs.* RAND and others.

Where two lots belonging to P. were subject to a mortgage thereon, given by a former owner of the mortgaged premises, and P. conveyed the south lot to L. and afterwards mortgaged the north lot to G., and subsequently gave a second conveyance of the south lot to L., who accepted such conveyance, *Held* that the acceptance of the second conveyance did not impair the title of L. to the south lot under his first deed; and that as between him and G., he was not estopped from denying that P. had any title to the south lot at the time he mortgaged the north lot to G., or at any subsequent time.

*Held also,* that, upon a foreclosure of the prior mortgage, which was a lien upon both lots, the north lot which was mortgaged to G. after the first deed to L., must be first sold, to satisfy the amount due upon such prior mortgage.

Where different parcels of mortgaged premises have been sold and conveyed absolutely, by the owner of the equity of redemption, at different times, the equitable rule, upon a foreclosure of the mortgage, is to sell such parcels in the inverse order of their alienation, to satisfy the debt. But the giving of a mortgage upon a part of the premises covered by the prior mortgage, is only an alienation of that part of the premises to the amount due upon the second mortgage.

If a part of the mortgaged premises has been mortgaged a second time, and the residue thereof has been sold and conveyed absolutely, subsequent to such second mortgage, the part mortgaged should be sold first, and the surplus proceeds of that sale, beyond the amount of the principal and interest due on the second mortgage, should be applied in payment of the first mortgage, before resorting to a sale of the residue of the premises, for that purpose, which were conveyed absolutely.

THIS was an appeal by J. Cogswell, one of the defendants, from so much of the decree in this cause as directed the part of the mortgaged premises upon which the appellant held a subsequent incumbrance to be sold first, to satisfy the prior mortgage thereon to the complainant. In January, 1835, the defendant Rand, mortgaged to J. Dater, a piece of land in the southeast corner of lot B. in Troy, being forty-three feet in front on Seventh-street, and running back seventy-four feet on the south line of lot B.; and also a strip of land four feet in width on such south line extending thirty-one feet further west to the public alley between Sixth and Seventh-streets. That mortgage was subsequently assigned to the complainant, and was foreclosed in this suit. Three days after the giving of such mortgage, Rand conveyed the equity of redemption in the mortgaged premises to C. Pierce. Pierce divided the premises into two lots, of equal width on Seventh-street, with an alley or passage four feet in width on the rear of each lot. On the 9th of March in the same year, Pierce conveyed the south lot with warranty, to C. Lansing, with the perpetual right of way, or passage, over an alley of four feet in width between the southwest corner of the premises and the public alley between Sixth and Seventh-streets; reserving to the grantor the right of way or passage by an alley of four feet in width across the west end of the premises thus conveyed to Lansing. This deed to Lansing was duly recorded on the

11th of March, 1835. In June, 1835, Pierce mortgaged to the defendant Gray, the equity of redemption in the north half of the premises, with the privilege of the alley or passage as reserved in the rear of the south half in the deed to Lansing, to secure the payment of $8000. This mortgage also included other lands upon which there were prior incumbrances. These incumbrances were subsequently foreclosed, and the surplus moneys applied upon the mortgage to Gray; leaving due upon that mortgage, at the date of the decree in this suit, about $4000.

After the conveyance of the south half of the mortgaged premises to Lansing, he conveyed the same to H. M. T. Powell; which conveyance was recorded a few days previous to the mortgage of the north half to Gray. Powell afterwards reconveyed to Lansing. On the 15th of March, 1836, Pierce gave another deed of the south half of the mortgaged premises to Lansing, with the same privileges and reservations as in the deed of March, 1835, containing covenants of warranty and seizin, and that the premises were free from all liens, incumbrances, or ground rents. And on the 23d of the same month Lansing conveyed to Dennis & Fitch, who gave back to him a mortgage upon the same premises, to secure the unpaid purchase money; which mortgage was subsquently assigned to Cogswell, the appellant. The case was heard before the vice chancellor upon the pleadings and proofs, as between the defendants Cogswell and Gray, in relation to their rights between themselves, as well as between them and the complainants. And by a stipulation of the solicitors it was admitted that the value of the north half of the mortgaged premises, included in the subsequent mortgage to Gray, was not sufficient to pay the balance due upon Gray's mortgage after satisfying the debt and costs due to the complainant.

The vice chancellor decided that Lansing, by receiving the second conveyance to him from Pierce, in March, 1836, which was subsequent to the mortgage of the north half of the premises to Gray, was estopped from alleging that the title to the south half of the premises was not in Pierce at the date of that conveyance; and that the mortgage to the complainant, with the costs of the suit, must be paid out of the south half of the mort-

gaged premises if the same was sufficient to pay such mortgage. He therefore decreed that the premises conveyed to Lansing, and upon which Cogswell's mortgage was a lien, together with the strip of land four feet in width extending from the southwest corner thereof back to the public alley, be first sold. And he directed the master to apply the proceeds of such sale to the payment of the complainant's debt and costs, and the costs of the defendants' solicitors and the expenses of the sale; and that if such proceeds were insufficient for that purpose, that the residue of the premises be also sold. From that part of the decree which directed the portion of the premises upon which Cogswell's mortgage was a lien to be first sold, Cogswell appealed.

*H. Z. Hayner*, for the appellant. Pierce took the whole, as Rand held it, subject to the prior mortgage to Dater. Pierce aliened the south lot to Lansing prior to the mortgage to Gray, and after this conveyance no title in such south lot was ever in Pierce. Pierce having covenanted with Lansing that he would warrant the title of this lot to him, his (Pierce's) subsequent grantee, or mortgagee, (Gray,) can have as against Lansing and his grantees, no higher right than Pierce had, and the north half of the premises must therefore satisfy the whole of the prior mortgage. The deed from Pierce to Lansing, of 15th March, 1836, does not show that Pierce then owned the south lot; but being a full covenant deed, it was undoubtedly taken to bind Pierce and his estate, to keep this lot free from loss, from any incumbrance; such as this very mortgage to Dater. This deed from Pierce to Lansing cannot operate as an estoppel to prevent Cogswell from denying that Pierce then had any title, for it clearly appears that he had at that time no title. The chain of title is perfect without resorting to his title. It is not necessary for Cogswell to rely upon the last deed from Pierce. Estoppels are not favored in equity. (9 *Wend.* 209. 2 *Cowen & Hill's Notes*, 1237. 8 *Cowen*, 586, 7. 6 *Paige*, 62 to 65.)

*D. Buel, jun.*, for the respondents. The complainant has a right to have his mortgage satisfied out of the premises, and

ought not to be delayed by the litigation between the other de-
fendants.  He having the oldest mortgage on both parcels, and
the defendant Gray having the next mortgage on one only of
the parcels, the court will marshal the incumbrances, and di-
rect in the decree of sale that the premises not included in
Gray's mortgage be first sold.  (1 *Story's Eq.* 588, § 633.  2
*Fonb. Eq. b.* 3, *ch.* 2, § 5.  *Atty. Genl.* v. *Tyndall, Amb.* 614,
615.  *Aldrich* v. *Cooper,* 8 *Vesey,* 388, 391, 395.  *Selby* v.
*Selby,* 4 *Russ.* 366.   *N. Y. & N. Jersey Steamboat Co.* v. *As-*
*sociation of Jersey Co., Hopkins' Ch.* 460.   *Evertson* v. *Booth,*
19 *John. (case at law,)* 486.   *Coonrad* v. *Harrison et al.,* 3
*Leigh's Rep. (court of appeals,)* 532.)   As between Gray and
Cogswell, Gray has the prior equity.   Gray's mortgage is prior
in date to Cogswell's, and was recorded when Cogswell's was
executed.   Consequently Cogswell was bound to know that
Gray had a right to compel Kellogg to resort first to the south
lot.   The conveyance from Pierce and wife to Lansing, of 6th
June, 1835, does not alter the equity.   For, on the facts before
the court, law will presume that the title returned to Pierce and
was in him long after the mortgage to Gray was given.   Lan-
sing, by taking the second conveyance from Pierce, is estopped
from alleging that Pierce was not seized of the south lot at the
time of such conveyance.   (*Coke Litt.* 352.   *Sinclair* v. *Jack-*
*son,* 8 *Cowen,* 585, 6.   *Dewy* v. *Bardwell,* 9 *Wend.* 65.   *Jack-*
*son* v. *Parkhurst,* 9 *Id.* 209.   *Dunn* v. *Cornell,* 3 *John. Cas.*
174.   *Carver* v. *Jackson, ex dem. Aston et al.* 4 *Peters,*
83 *to* 88.)   Cogswell, as assignee of the mortgage to Lansing,
has no higher claim than Lansing would have had.   The as-
signee of a chose in action sits in the seat of the assignor.
(*Webster* v. *Wise,* 1 *Paige,* 320.   *Covell* v. *Tradesmen's*
*Bank,* 1 *Id.* 131.   *Pendleton* v. *Fay,* 3 *Id.* 202 *to* 206.)   Gray
has the same priority in equity, as he would have had if Pierce
had made no other conveyance than that of the 15th March, 1836.

THE CHANCELLOR.  The decree is erroneous in directing the
south half of the mortgaged premises to be sold first, even if the
vice chancellor was right in supposing that Gray's mortgage

was entitled to a preference over that of the appellant. The admission of the parties that the part of the premises included in Gray's mortgage is not sufficient to satisfy the balance due upon that mortgage, and also to satisfy the complainant's mortgage and the costs, is not sufficient to throw the whole charge of the first incumbrance and the costs, upon the south half of the premises, which was conveyed to Lansing in fee. For if the part included in Gray's mortgage is worth any thing beyond the amount due on that mortgage, the surplus must, in any event, be applied in part payment of the complainant's debt and costs, before the part of the premises conveyed to Lansing can be resorted to for that purpose. If Gray's mortgage, therefore, was actually older than the first conveyance to Lansing, still the decree should have directed the master to sell the part of the mortgaged premises not embraced in that conveyance, first; and after deducting, from the proceeds, the amount still due upon Gray's mortgage, to apply the residue of such proceeds in satisfaction of the complainant's debt and costs, as far as it would go. The case would have been different, if Gray had had a conveyance in fee of that part of the premises, or if he was claiming under one who had received a conveyance in fee from Pierce. The equitable rule is, that as between subsequent purchasers of different parcels of the premises, such parcels are to be sold in the inverse order of alienation. But a subsequent mortgage of a part of the equity of redemption, by the owner of the whole of the mortgaged premises, is only an alienation of that part thereof to the extent of the money due on such junior mortgage, and for which the owner of such junior mortgage has no other security which should in equity be first resorted to. The conclusion, however, at which I have arrived upon the merits of this case, renders it unnecessary that I should place the reversal or modification of the decree upon that ground.

I think the vice chancellor erred in supposing that the acceptance, by Lansing, of a second deed for a lot which had been previously conveyed to him by the same grantor, could operate as an estoppel in favor of a mere stranger to that transaction. For the mortgage of another and a distinct lot to Gray, by the grantor in that

*Kellogg v. Rand.*

deed, nine months before, created no privity whatever in relation to this lot; the title to which was not in the mortgagor but in Powell, at the date of such mortgage. If the testimony of Powell did not show the fact to be otherwise, it perhaps might have been supposed that Powell had sold his interest in the south half of the mortgaged premises to Pierce, so that he had again become the owner of the legal title. But Powell swears positively he did not convey to Pierce; but that he actually reconveyed to Lansing, although that conveyance is not recorded. What the object was in obtaining this second deed from Pierce, unless it was to get an express covenant against incumbrances, to satisfy Dennis and Fitch, who purchased from Lansing about the time such deed was given, it is difficult to conjecture. It would not, however, have the effect to destroy or in anywise impair the title which Lansing previously had in the premises ; or change the equities which previously existed between him as the owner of the south half, and Gray as an incumbrancer of the north half of the mortgaged premises, in relation to the lien of the complainant's mortgage. When Gray received his mortgage upon the north half, he had constructive notice, that the part of the premises upon which he took his lien was bound in equity to sustain the whole burthen of the prior incumbrance. For the deed of March, 1835, to Lansing, for the south half of the mortgaged premises, and the conveyance from Lansing to Powell, were then both upon record. In addition to this, Gray had express notice that the south half had been previously conveyed by Pierce. For the mortgage itself recites the reservation of the right of passage in the rear of the south half of the premises contained in the conveyance to Lansing, and gives him that right as an appurtenant to the north half which was mortgaged to him. The date of Cogswell's mortgage is wholly immaterial ; as it relates back, in settling these priorities, to the date of the first deed to Lansing, under whom he claims.

The whole burthen of the complainant's mortgage, and the costs, should have been thrown upon the part of the premises not embraced in the deed to Lansing, in the first place ; and the part embraced in that deed should only be sold in case the pro-

ceeds of the sale of the other part proves to be insufficient. The decree must, therefore, be so modified as to direct the master to sell the north half of the mortgaged premises, not embraced in the deed to Lansing, with the right of passage across the rear of the south half by a four foot alley, as reserved in the deed, together with the four foot alley running from the southwest corner of the south half of the lot to the public alley; subject, however, to the right of the owners of the south half to use the same for a passage, as granted in the deed to Lansing. And the master must pay the debt and costs and expenses, specified in the vice chancellor's decree, out of the proceeds of such sale; and also the taxable costs of the appellant upon this appeal. The residue of the proceeds are to be brought into court to abide its further order. And if the part of the premises thus sold do not bring sufficient to pay such debt, interest, costs and expenses, then the decree must direct that the master sell the part of the premises described in the conveyance to Lansing, subject to the reservation of the right of passage by the purchaser of the north half and his heirs and assigns, and with the right of passage through the four foot alley on the south line of lot B. as granted to Lansing in such deed. The proceeds of such second sale must be applied to pay the residue of such debt, interest and costs and expenses, and the surplus must be brought into court to abide its further order.