METCALF and CUSHING *vs.* VAN BRUNT and others.

After an assignment for the benefit of creditors, not reserving the power of revocation, has been executed and delivered, and accepted by the assignees, the assignors have no such control over the property assigned as will enable them to make a new assignment, so as to confer upon the assignees any additional title to, or authority over, the assigned property, or to render the title which they have already obtained valid as against the creditors of the assignors, where the original assignment was void as to them, though valid as to the assignors.

APPEAL from a judgment entered on the report of a referee.

*C. W. Sandford*, for the appellants.

*Sherman S. Rogers*, for the respondents.

*By the Court*, HOYT, J. The plaintiff in this case recovered a judgment against Theodore and Charles F. Van Brunt and Charles S. Watrous, on the 11th February, 1860, for $4563.02 damages and costs, for hogs sold them prior to the 14th day of December, 1859. On that day the judgment debtors executed an assignment in trust for the benefit of creditors ; or rather, it was executed by two of them on that day, and by the other on the 16th day of December. The plaintiff caused an execution to be issued on said judgment, and levied upon property owned by the judgment debtors prior to, and after, the time of the assignment. They commenced this action in aid of said execution, making the judgment debtors and Hoppock, Seymour and Harback, the assignees, parties, for the purpose of setting aside said assignment as fraudulent and void against the plaintiffs as such creditors. This assignment contained the following provision : "And it is hereby mutually stipulated, covenanted and agreed, that the said parties of the second part shall not be liable for any losses which may occur in the management of said estate, except in cases of gross and willful negligence, nor for the acts, defaults or negligence of each other, but only for his own acts, neglects and defaults."

It is not contended, on the part of the defendants, but that this provision would render the assignment void as against the creditors of the assignors. But it is claimed that the assignment was never delivered so as to take effect, and that its invalidity being discovered, a new assignment was executed on the 27th day of December, 1859, bearing date on the 14th of December, leaving out this objectionable clause,

and in all other respects being like the original assignment. The referee has found that the original assignment was executed and delivered and accepted by the assignees on the 16th day of December, 1859, and the first and important question which arises is, whether this finding is sustained by the evidence.

It appears from the evidence, that Hoppock and Seymour, two of the assignees, resided in New York, and Harback, the other assignee, in Chicago, the judgment debtors having property and places of business in both cities. It appears, without contradiction, that the Van Brunts executed the assignment on the 14th of December, Watrous being absent from the city, but it was confidently expected that he would execute it on his return to the city, and it, with a duplicate, was put in the hands of Gen. Sandford, in whose office the assignment was drawn, to be executed by Watrous on his return to the city. Hoppock and Seymour were present at the time of its execution by the Van Brunts, and they took possession of the assigned property in the city of New York, a portion of it on the 14th and the residue the next day, and immediately caused a notice of the assignment to be published. On the 14th day of December Seymour telegraphed Harback that Van Brunt and Watrous had made the assignment, and that he was one of the assignees, and to make an inventory and take possession for the assignees. On the same day a letter was written to Harback to the same effect, signed by the names of Van Brunt and Watrous.

On the 16th day of December Watrous returned to the city of New York and executed the assignment, and one of the duplicates was given to Hoppock, who on the same day inclosed it in a letter and sent it by mail to Harback at Chicago. In the letter Hoppock requested Harback to proceed with his inventory as rapidly as possible, and send a copy as soon as might be, and also requested him, as soon as he had taken the inventory, to proceed to the disposal of salt and barrels to the best advantage, for the account of the assignees.

On the 20th of December Harback sent from Chicago to Seymour at New York a telegraph, saying: "Arrangement bad under Illinois law. Make a new assignment, omitting clause that assignees shall be liable only for gross negligence, nor for each other's acts. Leave out all that. Have assignees accept new one and forward it."

It will be observed that Harback does not say whether he had or had not accepted the assignment, and it does not appear that he returned it either to his co-assignees or to the assignors; but it does appear that after receiving this assignment and sending this dispatch, Harback continued to deal with the assigned property, and to recognize the existence of the assignment. On the 21st of December he wrote to Seymour, saying that his of the 11th was received that day, and in reply advised Seymour about the condition of several claims against Van Brunt and Watrous. On the 20th of December, 1859, Seymour wrote to Harback to forward, as soon as possible, all goods that were necessary to come; also to send statement or inventory of the property in his hands, and in case he wanted legal advice, of course to get it, and to sell off the cooperage at the best possible terms, and close up every thing he could as soon as possible, and keep them advised as he should proceed, and that he was writing by advice of Hoppock.

On the 23d of December Harback writes Seymour acknowledging the receipt of the letter of the 20th, and then says, "shall probably close up beef packing this week; will then forward you all the beef and other articles that will sell for more money in your city than here, and close up cooperage and other articles soon as possible. The cooperage will go slow, even at low prices. No packer will buy unless he wants them for immediate use," &c.

There can be no doubt whatever of the acceptance of the assignment by Hoppock and Seymour, when it was fully executed, as early as the 16th of December. One of the duplicates remained with their counsel, Gen. Sandford, and the

other was given Hoppock, and by him forwarded to Harback on that day. Harback had been previously advised of the assignment, and that he was one of the assignees; he did not decline to act as an assignee, but on the 21st of December he acknowledges by telegraph the receipt of the assignment, without stating the day of its receipt; gives advice that it is bad under Illinois law, and advises the making and forwarding of a new one, leaving out the objectionable features. But no new assignment is executed until the 27th day of December, and in the mean time Harback, as well as the other assignees, have possession and control of the assigned property, and deal with it as if it were theirs under the assignment, and without any direct repudiation by either of them of the acceptance of the original assignment; and the new assignment, although not in fact executed until the 27th of December, is dated back to the 14th of December, evidently on its face to cover the time the assignees had been acting and dealing with the assigned property under the original assignment.

I do not overlook the fact that General Sandford testifies that the first assignment was executed at his office on the 14th of December, by the Van Brunts, Hoppock and Seymour being present, and that it was deposited with him in escrow, " to take effect when executed by Watrous and accepted by Harback." He also says Watrous executed it on the 16th of December, in his presence. " It was still left in my possession." He evidently only means by this that one duplicate of the assignment remained with him after its execution by Watrous, because the evidence clearly shows that one of the duplicates was, on the 16th of December, forwarded by Hoppock to Harback by mail. Gen. Sandford himself speaks of the first assignment (duplicate) having been sent to Harback by mail, and of its being subsequently returned to the assignees in New York, with the names erased, but he cannot tell when, but thinks it was some months after it was executed. Seymour testifies that the duplicate copy of the

first assignment sent Harback was returned some time in the summer of 1860, and I understand by the account rendered by Harback as assignee, that he commenced selling some of the property at auction on the 22d of December. It does not appear when Harback was first advised of the execution of the second assignment, but it is quite evident from his letter, and the letter of his attorneys inclosed by him, that up to the 29th of December he knew nothing of its execution, and continued to deal with the property under the first assignment, although he considered it void under the laws of Illinois. (See exibits Nos. 18, 20, 21 and 22, of 27th and 29th of December.) By exhibit No. 22, of December 29th, it appears that Messrs. Scammon, McCagg & Fuller wrote to Harback, saying, " we again advise you as before, that you had better sell as soon as possible the personal property assigned to you by Van Brunt and Watrous, either at auction or private sale. You had better advertise it for sale at auction, and write to New York, *to the other assignees,* its situation, and the great probability that it will sell at very low prices ; that they or any other friends of Van Brunt and Watrous may have it bid in, or take such other steps as seem best to protect their interest. We again repeat that the assignment is void under our laws." I infer that these gentlemen were the counsel of Harback, and it is quite evident that they refer to the original assignment and advise Harback to proceed as soon as possible with the sale, and advise his co-assignees. It is quite clear these gentlemen did not then know that a new assignment had then been executed. On the same day, 29th December, this letter was inclosed by Harback in one to Seymour, saying that, " finding it impossible to sell the cooperage and other articles any thing near their value, they had, by advice of Messrs. Scammon, McCagg & Fuller, advertised the inclosed schedule of property to be sold on Tuesday, 10th January," &c. This letter closes with this statement: " The assignment just received." This probably refers to the sec-

ond assignment, which it is probable was received after Harback commenced writing his letter.

After a careful examination of the evidence, it seems to us to be impossible to resist the conclusion that Harback proceeded and continued to act under the first assignment, notwithstanding he was advised it was void by the laws of Illinois, and without knowing whether a new assignment would or would not be executed, until it was received by him on the 29th day of December. Besides, it is difficult to see how one of the duplicates of the assignment could be delivered to two of the assignees here and the other remain in the hands of the counsel, and still be considered in escrow. (*Worrall* v. *Munn,* 1 *Seld.* 229.) Again; two of the trustees having clearly accepted the trust, it may well be doubted whether the refusal of the other trustee to accept would prevent the title from vesting in the trustees who did accept. (5 *Paige,* 559. *Id.* 46.)

We therefore think that the referee properly found, as a question of fact, that the first assignment was properly executed and delivered to, and accepted by, the assignees. This fact being properly found, and assuming, as we must, that the first assignment was void here, as well as in Illinois, as against the creditors of the assignors, (*Litchfield* v. *White,* 3 *Seld.* 438,) it only remains to be seen what effect the second assignment has upon the original assignment; or whether it confers any valid title to the property in question upon the assignees, as against the creditors of the assignors.

The first assignment having been delivered to and accepted by the assignees, it vested the assignees with the title to the property, as against the assignors, although it was void as against such creditors of the assignors as should by proper proceedings seek to impeach its validity. But the assignors no longer had any interest in, or control over, the property assigned, except to compel the assignees to proceed under the assignment to close up the trust. The cancellation of

the original assignment, by erasing the names of the assignors, therefore, clearly would not operate to reinvest the assignors with the title to the property, and it is presumed was not so intended. (1 *John. Ch.* 417. 4 *Wend.* 585. *Id.* 474. 11 *Paige*, 59. 4 *Edw. Ch.* 678. 6 *Hill*, 469.) Besides, it does not appear whether these erasures were made before or after the execution of the second assignment.

It follows that the assignees took no title to the property in question under the second assignment, and the title which they derived under the first assignment being valid as against the assignors, but void as against their creditors, the assignors no longer had any such interest in, or control over, the assigned property as to enable them to do any act which would change or render the original assignment valid, which was upon its face void as against the creditors of the assignors. (*Porter* v. *Williams*, 5 *Seld.* 142. *Brownwell* v. *Curtis*, 10 *Paige*, 210. *Browning* v. *Hart*, 6 *Barb.* 91. *Leach* v. *Kelsey*, 7 *id.* 466.)

In the case of *Porter* v. *Williams*, (5 *Seld.* 142,) the assignment was made on the 5th of January and authorized a sale of the assigned property on credit. On the 29th of March, proceedings supplemental to execution were instituted by the procurement of an order requiring the assignor, who was the judgment debtor, to appear before a referee to be examined &c., and on the 4th of April a receiver was appointed. But before his appointment, and on the 30th of March, the debtor executed and delivered to the assignee an instrument which, after reciting that doubts had arisen, whether the authority to sell on credit did not vitiate the assignment of the 5th of January, proceeded to direct the assignee to sell for cash only. It was held by the court of appeals that the original assignment was void as to creditors, and that it was not rendered valid by the instrument executed after the supplemental proceedings were commenced. In that case, the action was to set aside the assignment by the receiver

Metcalf *v.* Van Brunt.

appointed in the supplemental proceedings. Judge Willard, who delivered the opinion of the court in that case, says: "It is believed that the assignor had divested himself of all control over the property by the assignment of the 5th of January, and that he could neither revoke nor alter it; and certainly not to the prejudice of a creditor whose lien on the property had attached by the institution of proceedings supplemental to execution."

The learned counsel for the defendants has referred us to the case of *Murray* v. *Riggs*, (15 *John.* 571,) holding that a deed or assignment void as to creditors, is capable of being confirmed and rendered valid by a subsequent instrument. But an examination of that case shows that all the assignments, except the last one, contained a power of revocation and change of the trusts by the assignor. He had not therefore, by those assignments, parted with his control over the property assigned, and the last assignment being absolute without power of revocation and unobjectionable as to form, was held valid. The original assignments were, in effect, revoked by the last one, pursuant to the power reserved therein to the assignor. That case is not therefore an authority for holding that when the assignor parts absolutely with his property, without power of revocation, by assignment containing provisions rendering it void as to creditors, he can by any subsequent assignment or instrument change its provisions or effect, so as to render it valid.

It is not now necessary to determine whether the assignees could have reconveyed the property to the assignors and then taken a new assignment, as was done in the case cited, (*Hone* v. *Woolsey*, 2 *Edw. Ch.* 292,) and thereby have made the second assignment valid; because there is no pretense that any such thing was done in this case.

The first assignment being delivered, we think the assignors had no such control over the property assigned as would enable them to make a new assignment so as to confer any additional title or authority over the assigned property upon

the assignees, or to render the title which they had already obtained valid as against the creditors of the assignors, which, by the original assignment, was clearly void as to them, but valid as to the assignors.

[ERIE GENERAL TERM, September 1, 1862. *Davis, Grover* and *Hoyt,* Justices.]