## In the Matter of the Accounting of NATHANIEL NILES, as Administrator, etc.

S. died in 1873 intestate, leaving him surviving a widow and a daughter, E., his only child and next of kin. The widow being deemed incompetent, on petition of E. letters of administration were issued to her and one N. They soon after made up between themselves an inventory, but none was filed until 1882. Most of the estate consisted of mortgages on real estate. E. allowed N. to have control of the assets, and as moneys were realized thereon, he loaned them on bonds and mortgages which were taken in E.'s name, individually. Other moneys were deposited in her name and were drawn upon by her as required. In 1882 N. failed, and thereupon E. took possession of the securities, and proceedings were instituted for an accounting by N. Upon the accounting N. credited himself with the investments so made on bonds and mortgages as payments to and for the use of E. The surrogate rejected this claim, and in his decree charged N. with the moneys represented by the securities, and required him to pay over to E., as next of kin, her distributive share thereof, and upon his complying with the decree required E. to transfer to him said securities. *Held*, error; that, conceding E. could refuse to accept or be bound by the securities as payments, she could not retain them, and at the same time claim that the items in the account representing them should be disallowed, but should have been required to transfer them to N. as a condition precedent to his being charged with the amounts; but, *held*, that assuming the investments were irregular and constituted breaches of trust, in the absence of proof of fraud or misrepresentations, just so far as E. had the means of knowing of her co-administrator's acts and assented to or acquiesced in them, either expressly or by her passiveness, she was bound and was estopped from objecting thereto.

Also, *held*, that it was immaterial whether N. treated the investments when made as for the estate or as payments to E.; that she being co-administratrix as well as beneficiary, and the widow's rights not being affected, was bound in either case; that she could not stand by and see an improper use made of the assets and thereafter claim immunity in her official, or advantage in her private, capacity.

The administration of assets of the estate of a decedent is peculiarly within the cognizance of equity, and a Surrogate's Court, in adjusting the accounts of executors or administrators, is governed by principles of equity as well as of law; it is not prevented by any rule of law from doing exact justice to the parties, according to the equities, within the confines only of statutory provisions.

He who holds a position of trust jointly with others cannot remain passive, when he knows of irregular acts of his associates, without incurring responsibility for such acts.

(Argued March 12, 1889; decided June 4, 1889.)

Appeal from judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order made April 3, 1888, which affirmed a decree of the surrogate of the county of Kings on settlement of the accounts of Nathaniel Niles, as administrator of the estate of Chauncey S. Stevens, deceased.

The intestate, Stevens, died in June, 1873, leaving him sur-viving a widow and a daughter, Elizabeth S. Miller, an only child. The widow appears to have been subject to fits or aberration of mind and was deemed incompetent for the trans-action of business. Therefore, his daughter, joining with her one Nathaniel Niles, a lawyer, and an old friend of the family, applied for and obtained to themselves the grant of letters of administration. For reasons satisfactory to them-selves, and apparently based on a desire that the widow should not know of the amount of the estate, because of her impaired mental condition, the administrators filed no inventory until 1882; but, not long after the death of the intestate, they made up between themselves, in August, 1873, an inventory and appraisement of the personal estate, which each signed. Most of the estate coming under their administration con-sisted of mortgages upon real estate. Mrs. Miller allowed her co-administrator Niles to have the custody of the assets of the estate and deferred to his management of the affairs, until he failed in a banking business in which he had been engaged. Then she obtained the possession of the assets and excluded him from connection therewith. During his manage-

ment, as moneys were realized upon the assets, Niles loaned them out upon bonds and mortgages, and the securities, representing the investments, were taken in Mrs. Miller's name, individually.   Other moneys were deposited at a banker's to her credit, against which she drew when she required funds for herself or to give to her mother.   It does not appear that any accounting and distribution were desired, until Niles' failure in 1882, when Mrs. Miller, the daughter, and her mother united in a petition to the surrogate for an order compelling him to account.   Thereupon he instituted a proceeding for a judicial settlement of his accounts and the surrogate consolidated the two matters into the present proceeding.   To Niles' account the widow and daughter (his co-administratrix) filed objections and the matter was referred to a referee. They contested various items in his account, but the contest finally resolved itself into a dispute over items of investments of the estate moneys, with which Niles credited himself as payments to or for the use of Mrs. E. S. Miller.   The investments so objected to were loans upon the bonds and mortgages taken in Mrs. Miller's name.   The referee reported against Niles, holding, as a conclusion of law, that these items were not payments to Mrs. Miller on account of her distributive share of the estate, but were investments of estate moneys made by Niles, which should be disallowed and himself charged with the sums represented thereby, with interest on each item from the date of the alleged payment.   The decree confirmed the report in such respect, and a provision was made therein that Niles should pay over to the widow her distributive share of the balance, as stated, and to the daughter, Mrs. Miller, as next of kin, her distributive share thereof. Mrs. Miller had been and was in possession of the investment securities and moneys proceeding therefrom, but the decree required Niles, notwithstanding, to make the payments called for by the decree, and upon his complying, then only was she to transfer over to him all the securities standing in her name, and moneys representing the investments or payments mentioned in the referee's report as being disallowed.

*Nathaniel C. Moak* and *Marston Niles* for appellant. In her twofold character of administratrix and next of kin, Mrs. Miller was, by her participation and acquiescence in the acts of Mr. Niles, so far bound that she cannot now repudiate these investments made with her knowledge and consent. (*Maccumbin* v. *Cromwell,* 7 G. & J. 157; Willis on Trustees, 10 Law Lib. 92.) If Mrs. Miller, the co-administratrix, directed, assented to or acquiesced in the investments made by appellant, she was bound by such investments so far as her share of her father's estate was concerned, and to the extent of her share, at least, she was bound to accept such investments. (Lewin on Trusts [6th ed.] 744, 745; *Raynes* v. *Raynes,* 54 N. H. 202, 210, 212; *Perkins* v. *Hammil,* 30 N. J. Eq. 557; *Birks* v. *Mickelthwaite,* 33 Beav. 409; *Belknap* v. *Belknap,* 5 Allen, 468.) Mrs. Miller is bound because of concurrence in the investments. (*Ryder* v. *Bickerton,* 1 Eden, 149, note; 3 Swanst. 80; *Walker* v. *Symonds,* Id. 54; *Wilkinson* v. *Parry,* 4 Russ. 272; *Cocker* v. *Quayle,* 1 Russ. & M. 535; *Nail* v. *Printer,* 5 Sim. 555; *Booth* v. *Booth,* 1 Beav. 125; *Langford* v. *Gascoyne,* 11 Ves. 336; *Smith* v. *French,* 2 Atk. 243; *White* v. *White,* 5 Ves. 555; *Trafford* v. *Boehm,* 3 Atk. 444; *Byrchold* v. *Bradford,* 6 Mad. 13; *Baker* v. *Carter,* 1 Y. & C. 255; *Underwood* v. *Stevens,* 1 Mer. 712; *Brice* v. *Stokes,* 11 Ves. 325, 326.). So far as her interest as next of kin is concerned, the rule applicable to co-trustees must be applied against herself as a trustee in the same way in which the law would apply it in favor of a third person against her as a trustee. (Perry on Trusts [2d ed.] § 418; *Hamburg* v. *Kirkland,* 3 Sim. 235; *Broadhurst* v. *Balgny,* Young, 1; *Thompson* v. *Beach,* 22 Beav. 326; *Williams* v. *Nixon,* 2 id. 475; *Booth* v. *Booth,* 1 id. 125; *Dix* v. *Burford,* 19 id. 409; *Clark* v. *Clark,* 8 Paige, 153; *Mayne* v. *Griswold,* 3 Sandf. 463, 474.) If the conduct of Mrs. Miller be treated as acquiescence, the result is the same. (*Kent* v. *Jackson,* 14 Beav. 367; *Styles* v. *Grey,* 1 M. & G. 422; *Ex parte Morgan,* 1 H. & T. 327; *Graham* v. *Birkenhead R. Co.,* 2 MacN. & G. 146; 2 Perry on Trusts, § 870; Lewin on Trusts, 737;

*Thompson* v. *Finch*, 22 Beav. 316; *Johnson* v. *Corbett*, 11 Paige, 266; *Weetjin* v. *Vibbard*, 5 Hun, 265, 267; *Wilmerding* v. *McKesson*, 103 N. Y. 329; *Croft* v. *Williams*, 84 id. 384, 388; *In re Brown*, 16 Abb. Pr. [N. S.] 457; *Monell* v. *Monell*, 5 Johns. Ch. 283; *Sutherland* v. *Brush*, 7 id. 22.) Where there are two trustees it is the duty of each to see that the property is duly secured or properly applied. (Smith's Man. of Eq. 195; Story's Eq. par. 110 a, 1281, note, 1284 n; 2 Spence, 310 n. 920, 934; *Correll* v. *Gatcombe*, 27 Beav. 568; *Griffiths* v. *Porter*, 25 id. 236.) The liability of joint administrators and co-executors is identical. (Lewin on Trusts [5th Eng. ed.] 222, *post*, 1836, note *i*, 1.) The defendant who is called to account, if held chargeable, should be afforded his remedies against his co-trustees and any third persons who have been accessory. (*Sherman* v. *Parish*, 53 N. Y. 483.) If an administrator purchases property in his own name with money belonging to the estate, a trust will result to legatees or other persons. (Perry on Trusts, § 127.) The fund may be followed so long as it can be identified. (Perry on Trusts, §§ 128, 130, 669; *Olive* v. *Caro*, 1 J. & H. 139; Lewin on Trusts, chap. 3, § 3, pp. 911, 912.) The court of probate in taking the account will act on equitable principles, that is, will act as a court of equity, not as a court of law. (Perry on Trusts, § 407; *Cross* v. *Smith*, 7 East, 246; *Jones* v. *Lewis*, 2 Ves. 241; *Poole* v. *Munday*, 103 Mass. 174; *Upson* v. *Badeau*, 3 Bradf. Sur. 13.) If the *cestui que trust* be one of the trustees, and did join with the co-trustees in a breach of trust, and the co-trustees have been made to repair the breach, the co-trustees have a lien on the share of the *cestui que trust*, who is also a trustee, for contribution. (Lewin on Trusts, chap. 3, §§ 911, 912; Id. chap. 13, p. 273.) Good faith cannot be asserted by one who aids in the diversion of a known trust fund from its lawful owner. (*Garner* v. *Germania Life Ins. Co.*, 110 N. Y. 266; *State* v. *Worthingham*, 23 Minn. 529, 531.) Mrs. Miller will not be permitted to take advantage of her wrong, or to claim for her act a construction which would make it to be a wrongful act. (*Blount* v. *Robeson*, 3 Jones' Eq. [N. C.] 73.)

*Charles Lyons, Jr.,* and *Merritt E. Sawyer* for respondents. Assuming the investments were made with the moneys of the estate and were not payments to Mrs. Miller, she is not estopped from setting up any breach of trust, unless, understanding all the facts and circumstances, she voluntarily concurred and acquiesced in the acts of which she now complains. (*Whistler* v. *Newneaun,* 4 Ves. 129; *Hughes* v. *Wells,* 9 Hare, 773; *Lloyd* v. *Atwood,* 3 De G. & J. 615; *Adair* v. *Brimmer,* 74 N. Y. 554; 2 Lewin on Trusts, 923, 926, 927; *Bucheridge* v. *Glasse,* Cr. & Ph. 135; *Thompson* v. *Finch,* 22 Beav. 325, 327; 6 De G., M. & G. 560; *Life Assn. of Scotland* v. *Siddal,* 3 De G., F. & I. 73; *Cockerell* v. *Chalmeley,* 1 R. & M. 425; 1 Lewin on Trusts, 498; *Carpenter* v. *Heriat,* 1 Eden, 338; *Morse* v. *Royal,* 12 Ves. 373; *Murray* v. *Palmer,* 2 S. & L. 486.) An administrator can only be held liable for the *devastavit* of his co-administrator, where, having knowledge of the misapplication or waste, he assents thereto or neglects some duty consequent upon his knowledge of such misapplication or waste. (*Wilmerding* v. *McKesson,* 103 N. Y. 332; *Croft* v. *Williams,* 88 id. 388; *In re Hall,* 5 Duer, 42.) A party's motives, reasons or mental operations are not in question. It is the fact only that is to be looked for. (*Champion* v. *Joselyn,* 44 N. Y. 657.) Declarations of a party are evidence against him, but can never be used in his own favor. (*Sweeting* v. *Turner,* 10 Johns. 216.) The appellant's exceptions to the refusal of the surrogate to make a separate decision and findings in addition to the decision and findings made by the referee, who was appointed to hear and determine all things, are not open to review in this court. (Code Civ. Pro. §§ 994, 997, 1337, 2545, 2546, 2576.)

Gray, J. After a careful examination of the voluminous and somewhat diffuse record and briefs, we are led to the conclusion that this appeal must succeed. The proceedings in the Surrogate's Court, and the decision which closed them were without any apparent regard to certain well-established

equitable principles; to the recognition and protection of which every person is entitled, while accounting in that court for his acts as executor or administrator.  The appellant, Niles, raises no question as to his responsibility towards the widow.  The issue is between him and his co-administratrix, Mrs. Miller, who is also the next of kin of the intestate.  And the question is whether she is in a position to hold her co-administrator, Niles, to a full liability for the consequences of improper dealings with the assets of the estate.  Can she divest herself of all responsibility for the consequences of his acts and, either in her capacity as co-administratrix, or, in her capacity as beneficiary, can she charge him with every act claimed to be a breach of trust, and with consequent losses? This question is not complicated by her dual capacity; rather, it is simplified; because the elements of concurrence, of knowledge, or of acquiescence, in the individual, are equally available to the administrator, Niles, as weaknesses in either position, which she may take in her attack upon him.

Before passing to the consideration of the question thus suggested, we observe, with respect to the decree of the surrogate, that it contains a provision which we hold to be highly inequitable and harsh.  It is contained in the concluding clause, and by it Niles is required to raise and pay over to Mrs. Miller the sum found due her as her distributive share of the estate, before she is to transfer to him the securities and moneys forming part of the estate, and which she had obtained and continued to retain possession of.  Niles was accounting as an administrator.  The theory of such accounting is the statement of what he received as the estate of the intestate; of his acts with respect to the assets in his hands and of a balance on hand for distribution. Disregarding, for the present, all questions as to the regularity of the investments of moneys made by him when he accounted, his balance was arrived at by stating, as credits to himself, those investments as payments to Mrs. Miller, as next of kin.  They were wholly disallowed as credits, upon her objection.  If she refused to accept, or to be bound by them, the

decree should make some allowance for them. She could not retain possession of them and, at the same time, claim that the items in the account, which they represented, should be disallowed and that the administrator should be compelled to pay over to her her share of the stated balance. That would be a most inequitable mode of proceeding. The parties interested in the administration of an estate are not entitled to any such species of security for its performance as that, or to any other than the bond which has been given. The administrator is either entitled to some credit for the securities, in which he has placed the moneys of the estate, and which he has delivered to the beneficiary; or, if he is not, and the securities are not accepted or recognized by the beneficiary, then he should have back all that the beneficiary may have received and now objects to his being credited with. It seems too plain for discussion that, if no credit whatever is given to the administrator for his investments, then he is entitled to be placed in his former position with regard to the estate and, consequently, to have the possession of all assets in the beneficiary's hands. He should have them, if for no other reason, in order to fulfill the requirements of the decree. It is easily imagined how it might happen that the administrator, if possessed of no individual resources, would be rendered incapable of making payment under such a decree. He might have acted in good faith, but mistakenly as to the law of his duties; and, being called upon to replace the moneys, represented by investments disallowed as improper, finds himself without the possession of the securities, but yet required, in some way, to make the payment. There is something in this which shocks the legal as well as the moral sense.

Without dwelling further on this objectionable feature of the decree, we come to the main question of the case. For the unusual delay in distributing the estate, continuing over some nine years, we are furnished with a probably good reason, in the fact of the recurring periods of insanity of the widow. The desire of the daughter to avoid any publicity of her mother's condition and the mother's unfitness to be entrusted

with the possession of her share of the estate, operated as.
causes for continuing the administration of the estate so long.
However it may have been, no objection seems to have been
raised, until the administrator Niles fell into his financial
difficulties; when his co-administratrix assumed, and excluded
him from, the control and direction of affairs. During the
course of the administration, up to this moment, Niles had
undertaken to make dispositions of the funds of the estate
by ways of loans and investments. There is no doubt but.
what Mrs. Miller reposed the utmost confidence in him and
relied upon his ability and honesty. That follows from her
selecting him to act with her in the administration; from
her entrusting him, from the beginning, with the custody of
the assets, and from her permitting him to make investments.
It is with respect to the investments, which he made with the
estate moneys, that Mrs. Miller now insists that they constituted.
breaches of trust on his part, for which he solely is answerable.

Assuming that the investments were irregular and improper
acts, and did constitute breaches of trust, the question, never-
theless, suggests itself as to whether Mrs. Miller is so dis-
sociated from their commission, as to be able to shift from her
own shoulders all responsibility for what has occurred. It.
may be proved that the administrator, in some instances, has
acted wrongly, and that he has abused the confidence
imposed in him, so as to deceive and mislead the judgment of
his co-administratrix. We do not say that he has not done
so, or that it might not be shown that he has deceived her.
But, taking the record before us, there is no finding that any
fraud was committed or deception practiced by Niles. There-
fore, we are not satisfied that any basis has been laid for hold-
ing him solely and exclusively liable for the consequences to
the estate of his acts. The referee found that the loans were
made without Mrs. Miller's knowledge, except in one instance;
but he also found that the securities in question were all taken
in her name. He further found as follows, viz. : "That when
informed that investments were taken in her name, she was.
told by Niles that they were so taken on account of her

mother's mental condition, for convenience   *   *   *   and understood that they were investments of the estate." This finding involves, it will be seen, the fact of knowledge having been, at some time, communicated to Mrs. Miller with respect to investments.    At this point it may be observed that, whether Niles treated the investments in question, at the time, as made for the estate of the intestate, and whether he is now entitled to treat them as payments to Mrs. Miller, as beneficiary, does not seem to be very material as a question. As she was co-administratrix as well as beneficiary, and the widow's rights are conceded and not affected, finding one way or the other would not affect the questions presented to us by these two parties.    The referee found expressly that there was information furnished to Mrs. Miller by Niles, concerning the investments, upon her request for such, and independently; but he denied numerous requests, presented on the appellant's part, for findings as to authority from Mrs. Miller to make the investments, and as to her assent or ratification with respect thereto, as to her knowledge thereof and the absence of objection thereto.

Unquestionably there is ample evidence in the case to establish, if not Mrs. Miller's concurrence, her assent in many, if not in all, instances; but such a fact seems to have had no influence upon the referee's mind in passing upon the case, and, evidently, was considered immaterial as affecting her rights.    The theory upon which he proceeded, and upon which the courts acted in confirming his decision, utterly ignored the effect upon the rights of the contestants of her assent to, or acquiescence in, the acts of the administrator.    This matter of the administration of assets is one which is peculiarly within the cognizance of equity, and a Surrogate's Court, in adjusting the accounts of executors and administrators, is governed by principles of equity as well as of law.    (*Upson* v. *Badeau*, 3 Bradf. 15.)    In the exercise of the statutory powers, conferred upon him to direct and control the conduct and settle the accounts of administrators and executors, the surrogate is not fettered; nor is he prevented by any rule of law from doing exact justice to the

parties. He is supposed to administer justice in each case within his jurisdiction, according as the equities of the case demand; within the confines only of statutory provisions. Now, what was Mrs. Miller's position in the case? She was co-administratrix and, at the same time, the next of kin and prospective distributee of two-thirds of the estate. Niles was joined with her to aid her in the office, which she could have filled alone. Except that she chose to leave the custody and management of the affairs of the estate to her co-administrator, she was, at all times, a factor in the administration, and legally chargeable with what was done therein; in the absence of any fraudulent practices of deception or concealment upon her by her co-administrator. She had frequent consultations with him and, at various times, sought and obtained information as to the affairs of the estate. There is no evidence that she was in any sense excluded from the administration by Niles. She relied upon his judgment, and, by her own testimony, we are informed that she "never failed, whenever he told her anything about investments, to assent to it." At another time she says "I did not object to any one of these investments when I heard of it." There is enough in this record to show that, if not in all instances, in many, she knew of the investments which were made by her co-administrator, and if she did not concur, either she assented, or, by raising no objection, acquiesced. Her attempt to distinguish between authorizing or directing an act of the other administrator, and assenting to it when done, is quite futile and ineffectual for any purpose here. Upon her, equally with her associate in the office of administration, rested the duty to be vigilant to guard the estate from waste, loss and impairment. Having sought the office, while she remained in it, she could not stand by and see an improper use made of the assets, and thereafter claim immunity in her official capacity, or advantage in her private capacity; whether such claim should be grounded upon ignorance of her legal duties and rights, or upon her mistaken reliance upon her associate in office. We hold this, with the proviso that if she can show that he deceived her and purposely concealed the

facts from her, which were requisite to a fair understanding of a transaction, she is not bound by it.

From what appears, we may assume that Niles acted generally upon his own ideas, and, possibly, often with some selfish or interested end in view. But to his taking the initiative in action, she never appears to have objected, if she did not actually prefer it; depending, as the evidence shows she did, upon his judgment. As to subserving his own ends, as he certainly seems to have done in some instances, by the employment of the funds of the estate, if she chose to consent, or, with knowledge, failed to object to it, she cannot be heard to complain of the consequences. Having entered upon the office, she was bound to perform its duties; and mere passiveness will not furnish an adequate excuse, or any ground for relief in equity for the consequences of administrative acts by her co-administrator. She could not rely upon him to manage affairs and then claim to have been relieved from the performance of her legal duty. He who fills a position of trust conjointly with others cannot remain passive, when he knows of irregular acts by his associates, without coming equally under the judgment of the law for the consequences. Mrs. Miller was bound to inform herself with respect to the affairs of the estate and to inquire as to the use which was made of its assets. (1 Perry on Trusts, §§ 418, 419, and cases cited; *Brice* v. *Stokes*, 11 Vesey, 324; *Styles* v. *Grey*, 1 Mac N. & G. 422; *Monell* v. *Monell*, 5 Johns. Ch. 293–296; *People* v. *Townsend*, 37 Barb. 527; *Wilmerding* v. *McKesson*, 103 N. Y. 329, and cases cited at p. 340.) It is unnecessary to cite further authorities upon such well-settled propositions. They will be found collected in the treatises on trusts; to which department of jurisprudence the matter of the administration of assets is referable for its governing principles.

There is no question of creditors to consider here. Mrs. Miller was the party principally interested in the estate and, at the same time, she had the power to protect herself in various ways. For injuries to our rights from the fraudulent acts or deception of others we are allowed to seek redress, but

for the consequences to ourselves of poor advice from others, of our own mistakes of judgment in business affairs, or with respect to the capacity of persons whom we employ, I see no relief in the law. Nor is the result affected by considerations of the respondent's position as *cestui que trust*. If there were breaches of trust committed by the administrator, in his management of the affairs of the estate, the concurrence of the *cestui que trust*, or her subsequent assent or acquiescence therein, with the means of knowledge afforded to her, would forever estop her from proceeding against the administrator, acting as her trustee, for the consequences therefrom. (Lewin on Trusts, 773, 774.) That author cites the case of *Brice* v. *Stokes* (11 Ves. 319), where it was said that knowledge in the *cestui que trust* of an improper act of the trustee has been held to prevent the former from holding the latter answerable. Such a principle would seem to merit especial application in a case like the present one, where the *cestui que trust* was associated in the very trust itself.

We hold, therefore, that just so far as Mrs. Miller had the means of knowing of her co-administrator's acts and assented to, or acquiesced in them, she is bound. The question is merely between the two. Where concurrence in the action of Niles can be proved, or, with adequate knowledge of it, she is proved to have assented, expressly, or by her passiveness should be deemed to have acquiesced in it, as co-administratrix she is chargeable with its consequences, and as beneficiary she is estopped from objecting to it; provided that she is unable to prove fraudulent practices by Niles, by which she was misled and deceived as to the facts of each transaction.

As the case was tried on a mistaken theory as to the liability of Mr. Niles, as one of the administrators, towards Mrs. Miller, it should be remitted to the Surrogate's Court for further proceedings, in conformity with the principles indicated in this opinion, and judgment should be entered accordingly, with costs to the appellant, to be paid from the estate.

All concur, ANDREWS, J., in result.

Judgment accordingly.