## Appeal of Weldy et al.

A., a testatrix, devised her property to her children. The will further provided that the shares of certain of the legatees should remain in the hands of the executors and be by them put out at interest, which should be paid yearly to said legatees, during their natural lives. B. and C., the executors, by a written agreement divided the trust funds between themselves, B. becoming trustee for three of the children and C. for the remaining three, of whom D. was one. No security was given by either executor for his share of the funds. In pursuance of this arrangements the interest was paid by said trustees to their respective beneficiaries for a period of many years. In 1875, B. died and in 1880, the letters testamentary of C., the surviving executor, being vacated because of his insolvency, E. was appointed administratrix *d. b. n. c. t. a.* On the audit of B.'s estate, D. claimed that the interest due to her from her mother's estate, which C., her trustee had not paid, should be paid to her by B.'s executors, and that they should also pay the corpus of her legacy to E., the administratrix. *Held,*

1. That the agreement of the executors as to the division of the trust funds was not binding upon the legatees, they not being parties thereto.

[Weldy's Appeal.]

2. That D.'s receipt for many years of the interest from C. was not such an implied acquiescence in the agreement of the executors as to estop her from holding the estate of B. liable for the non-payment of her legacy.

3. That it was the duty of the executors under the directions of the will and their agreement, to see that the whole fund was properly secured, and failing to do so, they should be held as sureties for each other.

4. That as the executors divided the fund between themselves without requiring security, and in disobedience to the injunction of the will, which required them to invest the fund committed to their charge, they were guilty of such a neglect of a joint duty as rendered each of them liable for any loss or misapplication of the funds of the estate.

5. Verner's Estate, 6 Watts 250, distinguished; Brown's Appeal, 1 Dallas 311, discussed; Weigand's Appeal, 4 Casey 471, followed.

March 1st 1883. Before MERCUR, C. J., GORDON, PAXSON TRUNKEY, STERRETT, GREEN and CLARK, JJ.

APPEAL from the Orphans' Court of *Berks county :* Of January Term 1883, No. 286.

This was an appeal by Mary Jane Weldy and Catharine M. Fox, Administratrix d. b. n. c. t. a. of Elizabeth Seyfert, deceased, from a decree of said court dismissing their exceptions to and confirming the report of an Auditor appointed to audit and restate the second account of Hon. Thos. R. Elcock, executor of Henry A. Seyfert, deceased, and make distribution of the balance in the hands of the accountant.

The facts, as they appeared before the Auditor, were as follows:

The decedent, Henry A. Seyfert, and his brother William M. Seyfert, were appointed executors of their mother's will and took out letter testamentary thereon. This testatrix (Elizabeth Seyfert) left five other children, and the issue of a deceased child, the exceptants, Mary Jane Weldy and Catharine M. Fox being among the former. She divided her estate between her children. It was further provided in her will that "the share of my son Joseph Seyfert, my daughter Catharine Fox, Caroline McManus, Jane Stevenson, and my son Simon Seyfert, shall remain in the hands of my executors, and by them put out at interest; and I order and direct that my executors shall pay to each of them the interest yearly and every year during their lives, and after the death of any of my said children their share shall be divided among their heirs."

The account of the estate was filed by Henry A. Seyfert in 1860 and the shares of the several legatees ascertained to be $1,254.49 each.

By an agreement in writing of the same year, to which the legatees were not parties, the executors divided the trust funds between them. Henry became trustee for the shares of Joseph, Catharine and Simon, and William for those of Caroline, Jane

(now Weldy) and Charles Minor (the son of testatrix's daughter). No security was given by either executor for his share of the estate. The interest on said shares were paid for many years by the executors to their respective beneficiaries.

Henry A. Seyfert died December 23, 1875 and William M. the surviving executor became insolvent and his letters testamentary were vacated in 1880 and administration d. b. n. c. t. a. on Elizabeth Seyfert's estate were granted to Catharine Fox.

Upon the audit of Henry Seyfert's estate and seven years after his death, Mary Jane Weldy claimed that the interest due to her from her mother's estate should be paid to her from the estate of Henry A. Seyfert and that the corpus of her legacy should be paid by his executors to Catharine Fox, administratrix d. b. n. c. t. a. of Elizabeth Seyfert. Counsel for the executors objected to the allowance of this claim on the ground that the agreement between Elizabeth Seyfert's executors as to the division of the trust estates was binding upon the legatees, and that therefore Mary Jane Weldy could only look to the insolvent estate of William M. Seyfert for payment. It was also contended that she had been already paid by Henry A. Seyfert.

As to the latter reason, there was some evidence, that her claim was amicably settled by an arrangement with Henry M. Seyfert. The principal witness in this connection was the Hon. T. R. Elcock, who testified as follows:—

" I have had repeated conversations with Mrs. Weldy about the whole indebtedness of William Seyfert to her. See has told me what she received from him in payment of the indebtedness. It was either two or three houses and lots in Philadelphia, and a mortgage for about five thousand dollars on some land down near Point Breeze, which she collected, I think, afterwards. Also a mortgage on some ore property in Hartford county, Maryland. I think it is nine or ten thousand dollars. Some of this she regarded as worthless, but William Seyfert regarded it as of so much importance that he was exceedingly anxious to get an agreement from her that she would pay back whatever was realized over and above her indebtedness. That was one of the contests about which she consulted me. She wanted to hold on. During the whole time of my administration she never made any claim on me for principal or interest of the alleged fund here; never even intimated that she had a claim against Henry Seyfert's estate for it."

On cross-examination he further testified :

" In all the conversations I had with her nothing was said about this particular claim. I gained the impression that William Seyfert owed her a considerable amount of money. She never told me the amount. The account was never stated be-

tween them ; in fact, I don't think either of them knew exactly what it was."

William M. Seyfert testified :

"Mrs. Weldy was not paid by me. I think she was not paid by Henry. She still holds me. Mrs. McManus was not paid by me. Joseph was not paid, nor Mrs. Fox. The reason the principal sums were not paid was because the sums were to be held in trust under the will."

There was other testimony tending to negative the supposition of a settlement between Mary Jane Weldy and William M. Seyfert.

The Auditor reported as follows:

" The share in which Mrs. Jane Weldy was interested remained in the hands of William M. Seyfert, she receiving interest from him, and it does not appear that she ever claimed interest upon the fund from Henry A. Seyfert in his lifetime. She seems to have acquiesced in the division of the trust funds made by the executors, and it is only after nearly seven years have passed since the death of Henry A. Seyfert, the co-executor, that she asserts a claim against his estate. It does not appear from the auditor's report upon the first account that she then made a claim against this estate.

" Mr. Livingood has argued that the liability of the executors in this case was a joint liability, cast by the will of Elizabeth Seyfert upon both executors, to secure the principal and interest of this trust ; therefore, William M. Seyfert being insolvent, the estate of Henry A. Seyfert is liable, although the trust fund may have been wasted in the hands of the insolvent surviving co-executor ; and cited Weigand's Appeal, 4 Casey 471 ; Perry on Trusts, sections 417 and 418. The bearing of the decision in Weigand's Appeal might well be worthy of consideration, and perhaps very pertinent to this present claim, but the evidence is that her claim was settled in an arrangement made with William M. Seyfert about the time of his insolvency, or thereafter. The claim, therefore, of Mrs. Jane Weldy is rejected and not allowed."

Exceptions filed to this report by Mary Jane Weldy and Catharine M. Fox, administratrix, were dismissed by the court (SASSAMAN, J.), and the report confirmed. The exceptants thereupon took this appeal, assigning for error this action of the court.

*James Otterson* (with whom was *William H. Livingood*), for the appellants.—The agreement of the executors to divide the funds between themselves was for their private convenience, and in no way affected the rights of legatees, who were not par-

ties to it, nor their own liability. The evidence was insufficient to
warrant the Auditor in finding that Mrs. Weldy had been already
paid. No receipt or release was produced and no oral testimony
adduced to show payment. On the contrary, there was direct
evidence that it was not paid. But we also contend that there
could be no legal payment made to Mrs. Weldy, even if it had
been attempted. Mrs. Weldy was covert, and could, therefore,
make no such contract. The only valid payment under the
directions of the will was that of the annual interest.

*Jeff. Snyder* (with him *H. W. Bland* and *Geo. F. Baer*),
for the appellees.—It is difficult to conceive wherein Henry A.
Seyfert was guilty of negligence so as to charge him with the
money held by his brother William. The testatrix trusted
them both and equally; Henry could no more ask the custody
of the whole amount than could William. It was not necessary
to insist upon an investment of the fund, because the testatrix
had not asked this and had trusted these brothers to take the
money themselves. Creditors might have asked this, but
legatees ought to be satisfied with the disposition made for
them by their testator.

It has been repeatedly said that it is the harshest demand
that can be made in equity, to compel trustees to make up a
deficiency not owing to their willful default: Eyster's Appeal,
4 Harris 376. Common skill, prudence and caution are all
that is required of trustee: Neff's Appeal, 7 P. F. Smith 96;
Jones's Appeal, 8 W. & S. 143; Chambersburg Saving Fund
Association's Appeal, 26 P. F. Smith 203. They are only
liable to a surcharge when guilty of fraud or supine negligence:
Moore's Appeal, 10 Barr 438; Springer's Est., 1 P. F.
Smith 342.

Mr. Justice GORDON delivered the opinion of the court, April
16th 1883.

We cannot at all agree to adopt the result reached, in the
case in hand, by the Auditor and court below. Not only are
wrong conclusions drawn from the facts presented, but in one
important particular the facts do not support the finding. It
may be, and doubtless is true, that Mrs. Weldy did not claim
the interest due her, on the fund created by her mother's will
from Henry A. Seyfert, during his life, and it may also be taken
for true, that she presented no claim against his estate therefor
for nearly seven years after his death. But neither of these
things have any special significance. That she did not make
such claim upon Henry, during his lifetime, is explained by the
fact that the interest was regularly paid to her by his co-execu-
tor and trustee, William M. Seyfert, and that she did not so

continue to receive it is accounted for by the insolvency of the latter in 1880. It is altogether probable that she knew of the disposition which Henry and William had made of the trust fund as between themselves, but as long as she continued to receive from the latter what the will gave her, she was not dispose to interfere with their arrangements. And why should she, so long as she got what belonged to her? It was understood all around that she had but a life estate in the corpus of the trust, and as long as she got her share of its product it was of no consequence by whose hands she received it. So as long as she had any expectation of a continuation of its receipt from William, she was not inclined to claim it from Henry's estate. But when by William's insolvency in 1880, and the vacation of his letters testamentary, all hope of payment from that source was cut off, she must, per force of circumstances, either turn to the estate of the co-trustee, or abandon her legacy altogether. But as Mrs. Weldy was no party to the arrangement by which the trust fund was divided between the executors; as her consent to that arrangement was never so much as asked for, we cannot see how she could be estopped by her mere acquiescence in a matter which belonged exclusively to the trustees.

Her neglect in this particular could certainly involve her in a consequence no more serious th. n the risk of the possible insolvency of both the executors.

But the Auditor finds that Mrs. Weldy's claim was settled in an arrangement made with William M. Seyfert, about the time of his insolvency. The testimony, however, supports no such finding. Were there any evidence to support such a conclusion, we would hesitate to disturb it, for the rule is to treat the findings of an Auditor as prima facie correct, but there is here, in fact, no such evidence. It is true, Judge Elcock says, he had repeated conversations with Mrs. Weldy about the whole indebtedness of William Seyfert to her, and that she told him what she had received in payment thereof. That it was two or three houses and lots in Philadelphia, a mortgage of $5,000 on some land near Point Breeze, which he thought, she had afterwards collected, and a nine or ten thousand dollar mortgage on some ore property in Hartford county, Maryland. Part of this, he says, she regarded as worthless, " but that William Seyfert regarded it as of so much importance that he was exceedingly anxious to get an agreement from her that she would pay back whatever was realized over and above her indebtedness."

But there can be no pretence that a transaction of this magnitude involved but the settlement of the interest on $1,254 for four or five years. This sum might have been included in it, but it certainly could not have been confined to it. The same

witness, however, says that he was impressed with the fact that
William Seyfert owed her a considerable amount of money, but
that in all the conversations he had with her, she said nothing
about the claim now in controversy.   Where, then, is the evi-
dence that this claim was so settled ?   There not only is no such
evidence, but, on the contrary, William M. Seyfert swears that
Mrs. Weldy was not paid by him.   We therefore, necessarily
conclude that the Auditor's finding, in this particular, is wholly
without that foundation of testimony which is requisite for its
support.

But it is urged that Henry A. Seyfert was not responsible
for the mismanagement and loss of the trust fund by his co-ex-
ecutor.   We, however, think the authorities do not support the
position thus assumed.

The testatrix, by her will, directed that the share, inter alia,
of Jane Stevenson (now Weldy), should remain in the hands of
her executors, and be by them put out at interest, and that that
interest should be paid yearly to the said Jane for and during
the period of her natural life.

But instead of complying with this testamentary direction
to properly invest the fund thus committed to their charge, the
executors, by an agreement in writing, resolved to divide the
whole fund between themselves, so that Henry should retain
thereof $3,763.48, the shares of Simon and Joseph Seyfert, and
Catharine Fox, and that William should retain a like sum, the
shares of Caroline McManus, Mary Jane Stevenson (Weldy) and
Charles Minor.

Now, whilst there may have been no very serious impropri-
ety in this conclusion of these trustees to retain and use the
trust fund, yet we think a little reflection will make it obvious
to any one, that having thus determined to invest it, it was their
duty to see that it was properly secured, and that, not having
so done, they ought to be held as sureties for one another.

It may be admitted, as ruled in Verner's Estate, 6 Watts
250, on the authority of Brown's Appeal, 1 Dall. 311, and
McNair's Appeal, 4 Rawle 148, that an executor, who has re-
ceived money of the estate and has paid it over to his co-execu-
tor, is not answerable to legatees for the loss of it in consequence
of his insolvency.   For this rule some color of reason may be
found in that as the testator entrusted the whole of his estate
to his executors without security, so they, in turn, may trust
each other.   It is, however, somewhat difficult to understand
why this rule should apply in the case of legatees only, and not
to creditors.   Nevertheless, such is the decision in Brown's Ap-
peal, and the reason for it, as there given, is, that as the legatees
as well as the executors are appointed by the will, therefore the
former cannot impose upon the latter the same responsibility

as that existing in favor of creditors. This may be a very good reason for this rule, though we confess our inability to see it. Nor, in this, are we singular, for Mr. Justice HUSTON, in Sterrett's Appeal, 2 P. & W. 419, utterly refuses to subscribe to a doctrine of this kind. But we are not disposed to attempt to reconcile the differences of the decisions upon a subject of which Chief Justice GIBSON says there has been more inconsistencies among English authorities on this head than any other, and on which, as Justice WOODWARD has intimated, in Irwin's Appeal, 11 Ca. 294, our Pennsylvania cases are by no means harmonious. The case in hand stands upon a footing essentially different from that occupied by those cases which have given rise to the conflict among the authorities cited. For, however it may be as to the responsibility of one executor who has passed the money of the estate over to his co-executor, there is now, and never has been, any difference of opinion as to their joint responsibility for a loss resulting from their joint negligence. As to this, Weigand's Appeal, 4 Ca. 471, is full in point, and the same doctrine is recognized in Hall *v.* Boyd, 6 Barr 270, and in Irwin's Appeal, 11 Ca. 294. We can, therefore, without hesitation, say, that as the executors, in this case, disobeyed the injunction of the will which required them to invest the fund committed to their charge, so that the cestuis que trust might have the benefit of the interest thereof during their several lives, and instead thereof, and without security, divided that fund between themselves, there was such a neglect of a joint duty as rendered them liable, the one for the other, for any loss or misapplication of that fund, or any part of it.

It follows, that the court below should have ordered the payment, to Mrs. Jane Weldy, of the interest due and unpaid to her on the sum of $1,254.49, from the estate of Henry A. Seyfert, and also the payment to Catharine Fox, administratrix de bonis non cum testamento annexo of the estate of Mrs. Elizabeth Seyfert, of the said principal sum, to be by her invested for the uses and purposes mentioned and directed in and by the will of said decedent.

        The decree of the Orphans' Court, as to the items indicated, is now reversed and set aside at the costs of the appellees, and it is ordered that distribution be made according to the directions contained in the foregoing opinion.