CHEEVER *v.* ELLIS.[1]

1. EXECUTORS AND ADMINISTRATORS—COEXECUTORS — CONTRIBUTION—BILL—AMENDMENT.

On a bill by the representative of a deceased executor against his coexecutor for an accounting of the deceased executor's transactions as executor, it is within the power of this court to permit an amendment to the bill and remand the case for the purpose of securing to complainant the right to have adjudicated the question of the coexecutor's responsibility for certain losses occurring through the executors' neglect.

2. SAME—FORM OF ORDER—COLLATERAL ATTACK.

Where the court in making the order designate the bill to be filed as a supplemental bill instead of an amended bill, but all parties understand, and the order recites, the purpose of the bill which is authorized, the propriety of the practice is not open to collateral attack while the order stands.

3. EQUITY—SUPPLEMENTAL BILL—DEMURRER—EFFECT.

Where a supplemental bill filed by order of the court admits that no new evidence has been discovered, and the former pleadings and the testimony taken on the former hearing are made a part of the bill, a demurrer to the supplemental bill raises the question whether the whole record presents a case prima facie entitling complainant to relief.

4. EXECUTORS AND ADMINISTRATORS — COEXECUTORS—CONTRIBUTION—BILL—EVIDENCE.

On a bill by the representative of a deceased executor against a coexecutor for an accounting and for contribution as to losses to the estate occurring through the fault of an agent appointed by both executors, evidence examined, and *held*, to show that the deceased executor assumed, through the agent, the sole management and control of the business entrusted to the agent.

5. SAME—PLEADINGS—BILL AND SUPPLEMENTAL BILL—INCONSISTENT AVERMENTS.

An averment in the original bill that the coexecutor entrusted practically the entire management of the estate to decedent is not inconsistent with an averment in the supplemental

[1] Rehearing denied December 17, 1906.

bill that the two executors joined in the first instance in appointing the agent.

6. SAME—JOINT INVENTORY—ESTOPPEL.

Where on a bill by the representatives of a deceased executor against his coexecutor for an accounting and contribution, the record shows the exact relations of the parties to the trust fund, the fact that a joint inventory was filed by them does not, as between the parties, estop either.

7. SAME—JOINT ACCOUNTS—CONCLUSIVENESS.

Nor does the filing of joint accounts conclude them.

8. SAME—JOINT EXECUTORS—LIABILITY—ACQUIESCENCE IN ACTS OF COEXECUTOR.

An executor who assents to a certain course by his coexecutor is, at least in a suit by the legatees or creditors, chargeable equally with the active trustee.

9. SAME— APPOINTMENT OF AGENT — SUBSEQUENT NEGLIGENCE— LIABILITY.

Where no fault is attributable to joint executors in appointing an agent to conduct certain business for them, but after one of the executors has assumed the entire management of the business through the agent, losses occur through his negligence in failing to keep proper control of the agent's acts, the coexecutor is not responsible.

10. SAME—EXECUTOR AS LEGATEE—QUALIFICATION OF RULE.

The rule that an executor is not liable to his coexecutor for losses occurring through the negligence of the coexecutor having the entire management of the estate, is not qualified by the circumstance that the nonmanaging executor is also a legatee under the will.

11. SAME—ESTOPPEL.

Where losses to an estate occur through the negligence of one of two executors, who assumes the entire management of the estate without molestation from his coexecutor, and the coexecutor is also a legatee under the will, the coexecutor and legatee cannot be estopped to assert the consequences of the devastavit against the managing executor by any other or different acts that would be effective to estop her in her capacity as executor.

Appeal from Washtenaw; Kinne, J. Submitted February 6, 1906. (Docket No. 36.) Decided July 3, 1906.

Supplemental bill by Noah W. Cheever, individually

and as special administrator of the estate of Leonhard Gruner, deceased, and others, against Caroline P. Ellis, individually and as executrix of the last will and testament of Joseph J. Ellis, deceased, Hudson P. Ellis, and John J. Ellis, for an accounting. From an order overruling a demurrer, defendants appeal. Reversed, and bill dismissed.

*Lawrence & Butterfield* (*B. M. Thompson*, of counsel), for complainants.

*Arthur Brown* and *Thomas A. Bogle* (*E. R. Sunderland*, of counsel), for defendants.

MONTGOMERY, J. The original bill in this case was filed by Cheever, as administrator of the estate of Leonhard Gruner, and by the bondsmen of Leonhard Gruner, given as executor of the last will and testament of Joseph J. Ellis. The bill was filed against Caroline P. Ellis, coexecutor with Gruner, and Hudson P. Ellis and John A. Ellis, legatees named in the will of Joseph J. Ellis, and prayed an accounting of Gruner's transactions as executor. The answer and cross-bill sought to surcharge Gruner's estate with certain items lost through his neglect. On the hearing in this court the account of Gruner was so surcharged with items amounting in the aggregate to a large sum. The case is reported in 134 Mich., at page 645. On the settlement of the decree it was ordered that such decree be without prejudice to the right of complainants, or any of them, to institute proceedings to enforce any rights of contribution from the coexecutrix which they might have; and upon further application a provision was inserted in the final decree as follows:

"Leave is hereby granted to the complainants to file a supplemental bill in the nature of a bill of review in this cause in said circuit court for the county of Washtenaw, in chancery, to enforce any rights of contribution from Caroline P. Ellis, coexecutrix of the estate of Joseph J. Ellis, deceased, that they may have."

Such a bill has been filed, setting up no newly-discovered testimony, but amplifying the statements in the original bill, and setting up certain facts which are claimed to establish complainants' right to contribution which were omitted from the original bill. To this supplemental bill the defendants demurred on numerous grounds, many of which relate to the propriety of adopting this remedy, and some go to the merits of the whole case as presented by the supplemental bill, so called. It is perhaps inaccurate to refer to this bill as a bill of supplement. It is manifest that when the original case was before us the aim of counsel for the complainant was to secure to his clients the right to have the question of Mrs. Ellis' responsibility considered. It was quite within the power of the court to permit an amendment to the bill and to remand the case for that purpose. Instead of making the order in this form, the amended bill authorized was designated a supplemental bill. All parties understood, and the order recites, the purpose of the bill which was authorized. While that order stands the propriety of the practice is not open to collateral attack.

The question remains, Does the supplemental bill present a case entitling complainants to the relief sought? as the complainants expressly state that no claim is made that there is any newly-discovered evidence, but insist rather that Mrs. Ellis was liable upon the record as it was presented in the original case, and that the order permitting the filing of a supplemental bill was asked for and granted for the purpose of presenting that question. As the complainants have made the former pleadings, and the testimony taken on the former hearing as well, a part of this bill, it would seem that the demurrer may well be treated as raising the question whether the whole record presents a case showing prima facie that Mrs. Ellis should be surcharged with any portion of the loss accruing to the estate through the default or fraud of French in connection with the Ogemaw securities.

The original bill averred that Mrs. Ellis was coexecu-

trix; that the inventory of the estate was a joint inventory; that joint annual accounts were filed down to 1898. The sixth paragraph reads as follows: .

"Your orators further show unto the court that while the said defendant Caroline P. Ellis was appointed coexecutor with the said Gruner of the estate of said Joseph J. Ellis, deceased, she entrusted practically the entire management of the affairs of said estate and trust to the said Gruner, except as hereinafter set forth, and that she expressed from time to time the utmost confidence in his integrity and ability and the utmost satisfaction with the manner in which the affairs of said trust were carried on."

The important averments by way of supplement or amendment made in the supplemental bill are briefly stated: That Myron H. French was, after due deliberation, appointed by Gruner and Mrs. Ellis as their joint agent in the management of the affairs of the estate in Ogemaw county, and that he acted as joint agent and never as Gruner's sole agent; that French frequently visited Ann Arbor, and at such times gave her all the information which Gruner possessed in regard to the affairs of the estate in Ogemaw county; that all the losses to the estate charged against Gruner in the final decree were losses which were due to the conduct and acts of said Myron H. French; that Mrs. Ellis signed and swore to the annual accounts; that she participated in the management of the affairs of the estate, repeatedly signed discharges of mortgages and assignments of mortgages, and understood fully what was being done in the management of the affairs of the estate; that during the administration she received $900 as fees for her services as executrix. As to the averments in the sixth clause of the original bill, the supplemental bill avers that "while it was true that said Caroline P. Ellis, executrix, intrusted practically the entire management of the affairs of said estate and trust to said Gruner, * * * it is also equally true that said Gruner, as executor, never had the exclusive management of any of the affairs of said estate and trust, and

that such affairs were managed jointly by said coexecutors; that said Gruner and said Caroline P. Ellis frequently consulted together, and also advised together with legal counsel in regard to the affairs of said estate;" that books of account were kept by said Gruner, and were open at all times to the inspection of said Caroline P. Ellis, executrix.

It is claimed by defendants' counsel that the averments of the supplemental bill are wholly inconsistent with the averments of the sixth clause of the original bill and with repeated references in said bill to French as Gruner's agent. We agree with counsel's contention to this extent: We think the whole case as made by the original bill and by Gruner's testimony showed that Gruner assumed to manage and control the Ogemaw securities through French. We quote from Gruner's testimony, taken in another court and appearing in the former record:

" *Q.* You may state whether or not you are executing the duties of executor at the present time ?

"*A.* I am.

" *Q.* You may state who has exercised mainly these duties, yourself or Mrs. Ellis ?

"*A.* I have mainly exercised these duties, but Mrs. Ellis has been generally informed.

" *Q.* But has taken no part in adjusting or taking care of the business ?

"*A.* Well, no direct part; no    *    *    *

" *Q.* Since you were appointed you have had the possession of all the notes and mortgages and other papers belonging to the estate, have you not ?

"*A.* Yes, sir.

" *Q.* Including the notes and mortgages and other matters in Ogemaw county?

"*A.* Yes, sir.

" *Q.* And during all the time since you have been executor you have kept possession of all the notes and mortgages that were made and executed on loans in Ogemaw county, have you not ?

"*A.* Yes, sir.

" Q. You have also controlled what should be done with them, have you not ?

"A. Yes, sir.

" Q. When anything was necessary to be done you have directed Mr. French or some one else to do it ?

"A. I have. *  *  *

" Q. You kept control of these matters under your discretion ?

"A. Yes, sir; and I could accept or reject any of the mortgages that were sent in.

" Q. You had the absolute control of the property in Ogemaw county ?

"A. Yes, sir.

" Q. And the absolute control of what should be done with it ?

"A. Yes, sir.

" Q. And kept them from the beginning of your administration up to the present ?

"A. Yes, sir."

It is true that French testified that he talked to Mrs. Ellis about the Ogemaw investments in a general way, but there is nothing to indicate that any of the individual transactions were taken up or considered by her. In fact, the averments on the original record, and the testimony taken therein and made a part of the supplemental bill, negative this. It is not inconsistent with the averments of the original bill to assert that Mrs. Ellis joined in the first instance in constituting French agent. If the fault in management had consisted of making this appointment, it would be clear that Mrs. Ellis should share the loss. The decision of the original case shows that no fault was imputed to the executors in retaining French as agent. 134 Mich. 650.

The question here presented would therefore appear to be this: Where one of two coexecutors intrusts to the other practically the entire management of the affairs of an estate, or of a particular part of it, and that other assumes to take practically complete charge of that part of the estate, and a loss occurs through his negligent performance of such assumed duty, shall the coexecutor be

surcharged with any portion of the loss, in a case where the question arises between the two executors, and where no rights of creditors or legatees are involved? And, secondly, if in general a negative answer should be returned to question 1, is the result different where the executor not in default is a legatee? As the record shows the exact relations of the parties to the trust fund, the fact that the inventory was a joint one does not, as between the two executors, estop either. *Hall* v. *Carter*, 8 Ga. 407; *Hilton* v. *Briggs*, 54 Mich. 265. Nor does the filing of joint accounts conclude the executors. *White* v. *Bullock*, 20 Barb. (N. Y.) 91; *Gaultney* v. *Nolan*, 33 Miss. 569; *Clarke* v. *Jenkins*, 3 Rich. Eq. (S. C.) 318. The general rule of liability of executors for a devastavit is stated with clearness in *Peter* v. *Beverly*, 10 Pet. (U. S.) 532, as follows:

" It is a well-settled rule that one executor is not responsible for the devastavit of his coexecutor any farther than he is shown to have been knowing and assenting at the time to such devastavit or misapplication of the assets; and merely permitting his coexecutor to possess the assets, without going farther, and concurring in the application of them, does not render him answerable for the receipts of his coexecutor. Each executor is liable only for his own acts, and what he receives and applies, unless he joins in the direction and misapplication of the assets."

See, also, *Sutherland* v. *Brush*, 7 Johns. Ch. (N. Y.) 17; *Wilson's Appeal*, 115 Pa. 95; *Myer* v. *Myer*, 187 Pa. 247; *Nanz* v. *Oakley*, 120 N. Y. 84 (9 L. R. A. 223). On the other hand, an executor who assents to a certain course by his coexecutor is, at least in a suit by the legatees or creditors, chargeable equally with the active trustee. *Irvine's Estate*, 203 Pa. 602; *In re Niles*, 113 N. Y. 547; *In re Peck's Estate*, 31 App. Div. 407, 161 N. Y. 655. These cases are cited by complainant to sustain their contention that when one of two executors, who is interested in the funds of the estate, turns them over to the other executor, and he is intrusted with the principal management of their investment, and a portion of the

funds are lost, in an accounting between the coexecutors each will be surcharged with one-half the loss.

A careful examination of the cases cited satisfies us that they do not make for any such hard and fast rule. *In re Niles*, supra: The items with which Mrs. Miller sought to surcharge the amount of her coexecutor were loans made in the name of Mrs. Miller. The rule for the retrial of the case was stated by Gray, J., as follows:

"Where concurrence in the action of Niles can be proved, or with adequate knowledge of it, she is proven to have assented expressly, or by her passiveness should be deemed to have acquiesced, in it as coadministratrix. She is chargeable with its consequences, and as beneficiary she is estopped from objecting to it."

This falls far short of holding that the exclusive control of one of two executors may not, as between himself and an interested coexecutor, be such as to fix upon him the sole responsibility for a devastavit. *Irvine's Estate*, supra: There were three executors. In determining that all were chargeable the court said:

"It must be remembered that the executors were acting jointly. They were in constant contact, and the acts of each might easily have been known to the others by the exercise of reasonable diligence. Moneys were sometimes paid to one and sometimes to another, but it was the intention in all cases   *   *   *   that all collections were to be reported to Mr. Parmalee as the accountant, and the proceeds turned over to him as custodian of the funds of the estate.   *   *   *

"As was said   *   *   *   in *Weldy's Appeal*, 102 Pa. 461:

"'However it may be as to the responsibility of one executor who has passed the money of the estate over to his coexecutor, there is not now and never has been any difference of opinion as to their joint responsibility for a loss resulting from their joint negligence.'"

In *Re Peck's Estate*, 31 App. Div. 407, the appealing executor is stated to have "admitted with commendable frankness that he should be charged personally with such of those investments as had been made upon his own re-

sponsibility and without the acquiescence of his coexecutor." The rule stated in *Re Niles* was reiterated.

In the present case it sufficiently appears that Gruner took upon himself the duty of caring for the Ogemaw securities. All the correspondence was with him. No fault is imputed to him in the fact of having selected French as agent, but the negligence for which his account was surcharged was after negligence in failing to give due and proper attention to the business which he assumed to control and did control without molestation from his coexecutor. The negligence must be held to have been the sole negligence of Gruner. We cannot impute a fault to Mrs. Ellis in thus reposing confidence in Mr. Gruner. *In re Daly's Estate*, Tuck. (N. Y.) 95; *Cocks* v. *Haviland*, 124 N. Y. 431; *In re Hunt*, 78 N. Y. Supp. 105. We are not able to see how the general rule is qualified by the circumstance that Mrs. Ellis was also a legatee. That circumstance would not relieve her coexecutor from the consequences of a devastavit. Nor would she be estopped by any other or different acts than would be effective to estop her in her capacity as executrix.

The decree is reversed, the demurrer is sustained, and, as the whole case is apparently stated, the proper decree would seem to be one dismissing the supplemental bill. The defendants will recover costs of both courts.

BLAIR, OSTRANDER, HOOKER, and MOORE, JJ., concurred.