*In re* TOLFREE ESTATE.

WENDLAND *v.* GRAY.

1. EXECUTORS AND ADMINISTRATORS—CLOSING OF ESTATE.

Executors were remiss in their duties, where they failed to follow testator's direction that estate be closed as soon as practicable and filed no account until after one of them became bankrupt over 17 years after testator's death.

2. SAME—ACCOUNTS—CLOSING OF ESTATE—TIME.

Co-executors are charged with notice of statutory requirement that accounts be rendered to the probate court and the estate closed within a 10-year period.

3. SAME—PROBATE CODE.

The administration of estates generally, and the rights and duties of the executors, were subject to the probate code from and after its effective date (CL 1948, § 701.1 *et seq.*, as amended).

4. SAME—NEGLIGENCE—ACCOUNTS.

Each of 3 co-executors of decedent's estate *held*, to have neglected his duty in the handling of estate involved, where no account was filed for upwards of 17 years after testator died, hence, each was at fault (CL 1948, § 704.35).

REFERENCES FOR POINTS IN HEADNOTES

[1] 21 Am Jur, Executors and Administrators § 244 *et seq.*
[2] 21 Am Jur, Executors and Administrators § 498.
[4] 21 Am Jur, Executors and Administrators § 246.
[6] 21 Am Jur, Executors and Administrators § 494.
[7] 21 Am Jur, Executors and Administrators § 250.
[8] 21 Am Jur, Executors and Administrators § 308.
[9] 21 Am Jur, Executors and Administrators §§ 251, 252.
[11–13, 16] 21 Am Jur, Executors and Administrators § 757 *et seq.*
[14, 15] 21 Am Jur, Executors and Administrators § 760.
[18] 30 Am Jur, Interest § 22.
[19, 20] 21 Am Jur, Executors and Administrators § 519 *et seq.*

5. SAME—SELF-DEALING—PROBATE COURT APPROVAL.

A fiduciary, in his personal capacity, may not engage in any transaction whatsoever with the estate which he represents, except with the written approval of the probate court (CL 1948, § 704.37).

6. SAME—ANNUAL ACCOUNTS.

Every fiduciary is required to file at least once a year an itemized account showing receipts and disbursements and the property remaining in the estate (CL 1948, § 704.38).

7. SAME—TRUST.

One accepting the position of a fiduciary of an estate makes it his legal duty to exercise reasonable skill and diligence in the execution of the trust.

8. SAME—FAILURE TO PERFORM DUTY—DAMAGES.

The failure of an executor to perform his duty, which results in loss to the beneficiaries of the will of the testator, amounts to a *devastavit*, whether from fraud, conversion, negligence or maladministration and the measure of damages is what the beneficiaries have lost by the failure of the executor to administer the estate.

9. TRUSTS—MISTAKE OF TRUSTEE—GOOD FAITH AS A DEFENSE.

Good faith is a defense to an action against a trustee where he has acted within the limits of his powers with proper prudence and diligence and has committed mistakes or errors of judgment, but it is not a defense to a trustee who has disregarded the limits placed upon his power by law or by the trust instrument.

10. SAME—KNOWLEDGE OF THE LAW.

One acting in a fiduciary or trust capacity may properly be charged with knowledge of the law imposing duties upon him.

11. EXECUTORS AND ADMINISTRATORS—CO-EXECUTORS—IMPROPER USE OF ASSETS.

Co-executors have equal duties to be vigilant to guard the estate from waste, loss and impairment and may not stand by and see an improper use made of the assets and thereafter claim immunity in their official capacity, or advantage in their private capacity, whether the claim is grounded upon ignorance of their legal duties and rights or upon their mistaken reliance upon an associate in office.

12. SAME—JOINT AND SEVERAL LIABILITY OF CO-EXECUTORS.

The joint and several obligations of co-executors cannot be defeated by allowing them to charge against each other the failure of the duty of performance.

13. SAME—CO-EXECUTORS—JOINT AND SEVERAL LIABILITY.

Testator's son and 2 friends, named as co-executors of his will, may not escape responsibility by each leaving to the others the performance of duties devolving equally on all 3, as each was bound to act in good faith for the best interests of the estate and in conformity with the will and the law under which the probate proceedings were had.

14. SAME—CO-EXECUTORS—BANKRUPTCY—CLOSING OF ESTATE.

Co-executors of estate who were remiss in their duty to close the estate as promptly as circumstances permitted and who delayed doing so until after one of them who ran a private bank in which estate funds were deposited had become bankrupt, were each chargeable with the loss occasioned thereby.

15. SAME—CO-EXECUTORS—LOSS TO BENEFICIARIES.

An executor who suffers his co-executors to make an improper use of funds belonging to the estate is liable for a loss resulting to beneficiaries of the estate.

16. SAME — CO-EXECUTORS — LOSS TO BENEFICIARIES — INTEREST — CLOSING OF ESTATE—BANK DEPOSITS.

Each of 3 co-executors who were negligent in the conduct of an estate with loss resulting to the beneficiaries thereof is individually liable to the estate and should be surcharged therefor with interest on the loss occasioned by the delay in closing the estate until after failure of a bank in which the estate funds had been deposited.

17. SAME—DISCRETION OF COURT—ALLOWANCE OF INTEREST.

The matter of allowing interest on items as a charge in favor of or against an executor of an estate is vested in the discretion of the trial court and will not be overruled unless there appears to have been a manifest abuse of such discretion.

18. SAME—INTEREST.

Liability of executors for interest charged on losses suffered by beneficiaries of a decedent's estate may properly be predicated upon failure to dispose of assets, make proper distribution to those entitled thereto, and seasonably close the estate.

19. SAME—FEES.

Allowance of $3,111.40 to 1 of 3 co-executors, for services rendered to estate, being 1/3 of the statutory fees which would have been allowable to the executors if the administration of the estate had been terminated within a period of 10 years from its inception and which services were presumably rendered for the benefit of the estate and the beneficiaries under the will *held*, neither an abuse of discretion nor insufficient to constitute compensation to which he was entitled, under the circumstances shown.

20. SAME—FEES—STATUTES.

An executor acquires no vested rights to compensation by virtue of the statutory provisions in effect at the time of his appointment.

Appeal from Ogemaw; Toms (Robert M.), J., presiding. Submitted October 2, 1956. (Docket No. 10, Calendar No. 46,857.) Decided December 6, 1956.

Margaret Wendland, Helen Winter and Joan Orr, heirs and beneficiaries under the will of John Tolfree, deceased, and Arthur E. Crawford, trustee in bankruptcy for D. Eugene Tolfree, heir and one of 3 co-executors, object to accounts of the co-executors and to allowances of fees to William G. Gray as a co-executor, and seek to hold liable as surety the United States Fidelity & Guaranty Company for the misfeasance of the co-executors in their failure to close estate promptly and for their malfeasance in causing loss through deposits in improper bank. Order and judgment granting partial fee to William G. Gray and surcharging loss against D. Eugene Tolfree, one of the co-executors and the owner of defunct bank. Defendant United States Fidelity & Guaranty Company appeals. Defendant Gray and plaintiff Crawford cross-appeal. Affirmed in part, reversed in part and remanded for entry of judgment surcharg-

ing loss occasioned by bank failure against all of the co-executors.

*Carl H. Smith, Jr.,* for plaintiff Wendland.

*Karl K. Leibrand,* for plaintiffs Winter and Orr.

*Arthur J. Kinnane,* for plaintiff Crawford, trustee.

*Edwin S. Bartlett,* for defendant Gray.

*Walter A. Mansfield* and *David S. DeWitt,* for defendant United States Fidelity & Guaranty Company.

CARR, J. The record before us in this case does not indicate that there is any dispute between the parties with reference to the material facts. John Tolfree, a resident of Ogemaw county, died on or about February 9, 1935. He left a will in which he had designated D. Eugene Tolfree, his son, William G. Gray and Edmund H. McGowan as executors, further providing that if any of said persons should be unable to act, or should refuse to qualify, an executor should be appointed in his place by the judge of probate of the county, to the end that at all times there should be 3 executors of the estate. However, Tolfree, Gray and McGowan accepted the appointments and entered into bond on which the United States Fidelity & Guaranty Company was surety. D. Eugene Tolfree was the sole or principal owner of a private bank carrying on business within the county, and funds of the estate, as received from time to time, were deposited therein.

Included in the estate of John Tolfree was a store, the operation of which was continued with Gray in immediate charge. It appears that he was paid for

his services in operating the business, which was sold in 1943. Gray collected rents from other real estate, and all moneys received by him were deposited in the bank operated by his co-executor. Under date of November 2, 1939, Tolfree, McGowan and Gray, by instrument in writing, authorized the latter to draw all checks necessary for the payment of salaries and other expenses in conducting the affairs of the estate. Apparently Gray had been previously exercising the authority granted by the instrument in question, which undertook to ratify prior transactions of the character mentioned.

Although the will directed that the estate should be closed as soon as practicable after the death of the testator, no attempt was made to do so. Prior to 1948 some payments were made to beneficiaries under the will. As of October 1st of said year the amount on deposit was approximately $4,500. Thereafter the account was increased by further deposits until in July, 1951, it amounted to $33,194.95, as shown by the ledger cards of the bank. The failure to make further disbursements to the parties entitled thereto is not explained. On July 27, 1951, Tolfree filed a petition for the appointment of a receiver for the bank. Thereafter bankruptcy proceedings were instituted, and Robert E. Byrne was appointed trustee. Subsequently he was succeeded by Arthur E. Crawford, who is a party to the case on appeal.

The executors failed to file any accounts in probate court until after the closing of the bank. Thereafter 4 separate accounts were filed, covering, in the aggregate, the period from February 9, 1935, to April 30, 1952. Executor Gray also filed a petition for the allowance to him of compensation for services rendered to the estate. The allowance of the petitions of the 3 executors for the approval of the 4 accounts filed and the request of Gray were opposed by beneficiaries under the will, who claimed that the execu-

tors had not properly performed their trust and that Mr. Gray was not entitled to any compensation because of the manner in which the affairs of the estate had been handled.

Following a hearing the judge of probate entered an order granting the sum of $9,000 to Gray and surcharging against executor Tolfree the amount of the loss that might be suffered by the estate because of the failure of the bank. From such order the beneficiaries referred to, the trustee in bankruptcy for D. Eugene Tolfree, and the United States Fidelity & Guaranty Company, surety on the bond of the executors, appealed to the circuit court. On the hearing there a transcript of the testimony introduced in probate court was received as part of the record. Additional proofs were also taken, Gray being the sole witness examined. The circuit judge determined on the basis of the proofs before him that the 3 co-executors, Tolfree, McGowan and Gray, should be surcharged with the loss resulting from the failure of the bank, and that, for the services that he had rendered, Gray should receive the sum of $15,000.

Petitions were filed by Gray and McGowan, and by beneficiaries under the will, to set aside the order entered and to grant a new trial. Said petitions were allowed, and under date of June 28, 1955, judgment was entered relieving executors Gray and McGowan from liability, surcharging Tolfree with the amount of the loss resulting from the failure of the bank, surcharging him also with interest at the rate of 5% per annum on all funds of the estate in his possession, over and above the sum of $5,000, from December 31, 1948, to July 27, 1951, when the bank closed its doors, and further surcharging him with interest at the rate of 5% from July 27, 1951, to June 6, 1955, on the funds impounded in the bank, subject to dividends by the trustee in bankruptcy, and with interest on the balance of estate funds impounded from

June 6, 1955, to the date of payment thereof. An allowance was made to executor Gray in a sum equal to 1/3 of the statutory fees which would have been allowable to the executors if the administration of the estate had been terminated within a period of 10 years from its inception, the amount of such fees being computed at the sum of $3,111.40. From this judgment the trustee in bankruptcy for Tolfree, the United States Fidelity & Guaranty Company, and co-executor Gray have appealed.

That the executors were remiss in their duties is not open to question. They, and each of them, disregarded the direction of the testator that the estate should be wound up as soon as practicable. No reason is suggested for such failure. They permitted the estate funds to remain in the bank of co-executor Tolfree until that institution closed its doors. It appears from undisputed testimony that said bank was insecure at the end of 1946, and actually insolvent a year later. Whether this condition was responsible for the failure to make disbursements to beneficiaries, notwithstanding the marked increase in the size of the deposit, is solely a matter of conjecture. Neither Tolfree nor McGowan testified in the probate court hearing or subsequently in the circuit court. Unquestionably Gray knew of the existence and size of the account for he deposited checks therein from time to time and also received monthly statements from the bank.

It is a fair inference that McGowan knew where the estate funds were deposited. When he signed the written authority for Gray to draw checks in payment of salaries and other expenses in connection with the administration of the estate, it is scarcely conceivable that he did so without knowing where the account was maintained. It appears further from the testimony of Gray that from time to time various papers were presented to McGowan for his signa-

ture as co-executor, and it may be assumed that he understood the nature of such papers and was familiar, to a certain extent at least, with estate matters. He knew that the estate had not been closed, and he, as well as his co-executors, was charged with notice of the requirement of the statute with reference to the rendering of accounts to the probate court and to the closing of the estate when ready therefor, and within a 10-year period. From and after the effective date of the probate code of 1939[*] the administration proceedings generally, and the rights and duties of the executors, were subject thereto. CL 1948, § 704.35 (Stat Ann 1943 Rev § 27.3178 [286]), reads as follows:

"Every fiduciary shall be liable to any interested party for any loss to the estate he represents arising from his embezzlement; he shall further be liable for any loss through commingling of funds of any estate with funds of his own; for negligence in the handling of an estate; for wanton and willful mishandling thereof; for loss through self-dealing and through failure to account for or terminate the estate when it is ready for termination and no extension of time has been granted by the court, and for any misfeasance, malfeasance, nonfeasance or other breach of duty. An estate shall be closed as promptly as possible, unless for good cause shown the court extends the time therefor, but not exceeding 10 years, in a decedent's estate unless otherwise provided by will or due to the existence of a contingent claim as provided in this act, and fiduciaries as officers of the probate court shall be held in strict account for prompt and expeditious termination thereof. The probate court in its discretion may at any time order any fiduciary under its jurisdiction to file an accounting, and after due hearing thereon, the probate court

---

* PA 1939, No 288 (CL 1948, § 701.1 *et seq.*, as amended [Stat Ann 1943 Rev and Stat Ann 1955 Cum Supp § 27.3178(1) *et seq.*]).

shall enter such order as shall agree with the law and the facts of the case.

"Whenever a decree shall have been made by the probate court for the distribution of the assets among the creditors, the fiduciary, after the time of payment shall arrive, shall be personally liable to the creditors for their debts, or the dividend thereon, as for his own debt."

It will be noted that the statute expressly recognizes liability for negligence in the handling of an estate, as well as for a violation of the affirmative provisions thereof. The conclusion cannot be avoided in the instant case that each co-executor neglected his duty. Had the estate been closed as directed by the testator, and as required by the statute, the loss due to the bank failure would not have occurred. No extension of time was sought and no reason for failure to promptly close the estate has been shown. Because of the failure to file accounts the probate court was not informed as to the situation existing. In such failure, as well as in the disregard of the duty to terminate the estate, each of the co-executors was at fault. Each was bound by the provisions of the will and by the statute. It was doubtless to Tolfree's personal advantage to have the estate funds deposited in his bank. Both Gray and McGowan acquiesced in the situation, the former actively participating therein through the deposits made by him from time to time.

As further indicative of the public policy of this State as declared by statute, it is provided (CL 1948, § 704.37 [Stat Ann 1943 Rev § 27.3178(288)]) that:

"Except with the written approval of the probate court, a fiduciary in his personal capacity shall not engage in any transaction whatsoever with the estate which he represents."

It may be noted, also, that by specific direction in CL 1948, § 704.38 (Stat Ann 1943 Rev § 27.3178 [289]), every fiduciary is required to file at least once a year an itemized account showing receipts and disbursements and the property remaining in the estate.

This Court in prior decisions has had occasion to consider the nature of the obligation resting on one acting in a fiduciary capacity. In *Henderson* v. *Sherman,* 47 Mich 267, suit was brought to require an accounting for moneys received under a trust, which trust had been created by deed. In discussing the matter of liability on the part of the defendant, it was said (p 275):

"Mr. Sherman fully accepted the office and he thereby made it his legal duty to exercise reasonable skill and diligence in the execution of the respective trusts specified in the deed. This was not done."

In *MacKenzie* v. *Union Guardian Trust Co.,* 262 Mich 563, 588, it was said:

"The failure of an executor to perform his duty, which results in loss to the beneficiaries of the will of the testator, amounts to a *devastavit,* whether from fraud, conversion, negligence, or maladministration. Bacon's Abridgment, title, Executors [p 100]. The failure of the defendant as executor of the estate of deceased to set up the trust fund provided in the will of deceased amounts to a *devastavit.* 14 Halsbury's Laws of England, p 316. The precise sum plaintiff should receive and which defendant should pay is what the former has lost by the failure of the latter to properly administer the estate of deceased. *Perrin* v. *Lepper,* 72 Mich 454.

"Good faith is a defense, where a trustee, acting within the limits of his powers with proper prudence and diligence, commits mere mistakes or errors of judgment, but is not a defense where a trustee disregards the limits placed upon his power by law or by

the trust instrument. *Gibney* v. *Allen,* 156 Mich 301; 28 Am & Eng Enc Law (2d ed), p 1063."

See, also, with reference to the nature of the duty resting on an executor or administrator, *In re Abramovitz' Estate,* 278 Mich 271, 275; *Reconstruction Finance Corp.* v. *Lee,* 290 Mich 328, 331.

That one acting in a fiduciary or trust capacity may properly be charged with knowledge of the law was recognized in *Olitkowski* v. *St. Casimir's Savings & Loan Assn.,* 302 Mich 303. There plaintiff, as administratrix, paid funds of the estate to defendant, apparently on the theory that she was thereby making a deposit. It was her claim that in so doing she acted under the advice of an attorney who, this Court found (p 322), counselled her "without revealing to her that such disposition of the funds of the estate was an attempt to invest the same in the stock of the association or advising her that such an attempted use of the estate's funds was unlawful." Commenting further on the situation, it was said (pp 322, 323):

"Plaintiff, like every other intelligent citizen, was chargeable with knowledge of the law that money is accepted by such associations only as on account of an investment in the stock of the association; and likewise she was chargeable with knowledge of the law that at the time she was carrying on this account the funds of an estate could not be lawfully so invested."

The Court further pointed out that a subsequent change in the statute* with reference to investments by fiduciaries did not alter the situation. In accordance with the decision cited it must be said in the case at bar that the co-executors were chargeable with knowledge of the duties imposed on them by law.

---

* See, currently, CL 1948, § 555.201, as amended (Stat Ann 1955 Cum Supp § 26.85).—REPORTER.

Counsel have referred in their briefs to *Cheever* v. *Ellis,* 144 Mich 477 (11 LRA NS 296). This was a suit in equity by the administrator of the estate of Leonhard Gruner, deceased, against defendant individually and as executrix of the last will of Joseph J. Ellis, deceased, for an accounting. Gruner and Mrs. Ellis were co-executors of the will of Ellis. In prior litigation, reported as *Cheever* v. *Ellis,* 134 Mich 645, the estate of Gruner was charged with certain losses that had resulted from his failure to properly perform his duties. The decree entered specified that it was without prejudice to the right of the complainant administrator, or other plaintiffs, to seek contribution from the co-executrix, Mrs. Ellis. This resulted in the institution of the second case, to which counsel have referred. Plaintiff had decree below which this Court reversed, holding that under the facts involved fault could not be imputed to defendant because of her reposing confidence in Gruner with reference to the handling of certain securities through an agent. It appears that defendant had acquiesced in the appointment of the agent but the loss to the estate occurred because of subsequent acts of said agent, who was supervised solely by Gruner, rather than from any action in which defendant had acquiesced or of which she had knowledge. It will be noted that the controversy in the *Cheever Case* was between one co-executor and the estate of the other rather than on behalf of the estate or beneficiaries under the will. It must be said that the situation in the case at bar is not an analogous one.

In the opinion in the *Cheever Case* reference was made to *In re Niles,* 113 NY 547 (21 NE 687). There Elizabeth S. Miller, the daughter of Chauncey S. Stevens, deceased, was appointed administratrix of the estate of her father, and defendant Niles was named as co-administrator. Apparently Mrs. Miller

allowed Niles to handle certain investments for the estate, some of which were taken in her name. The court of appeals, in an action brought by her for an accounting, came to the conclusion that she assented to or acquiesced in the acts of Niles. In discussing the matter, it was said, in part (p 557):

"Her attempt to distinguish between authorizing or directing an act of the other administrator, and assenting to it when done, is quite futile and ineffectual for any purpose here. Upon her, equally with her associate in the office of administration, rested the duty to be vigilant to guard the estate from waste, loss and impairment. Having sought the office, while she remained in it, she could not stand by and see an improper use made of the assets, and thereafter claim immunity in her official capacity, or advantage in her private capacity; whether such claim should be grounded upon ignorance of her legal duties and rights, or upon her mistaken reliance upon her associate in office."

Based on the conclusions reached as to the facts, the order of the supreme court, which had affirmed the decree of the surrogate court in plaintiff's favor, was reversed and the case remanded with directions in conformity with the opinion.

In *Gilbert's Appeal*, 78 Pa 266, it appears that one of the co-administrators had purchased from the others the interest of the decedent in a partnership. Subsequently he resold such interest at a substantial profit. In holding that the co-administrators were liable, it was said (p 270):

"The administrators may have acted in good faith, and under the advice of counsel, as was suggested by the court below. But neither good faith nor the advice of counsel can avail to sustain such a transaction as this. It does not need authority to show that an administrator cannot so deal with property intrusted to his care."

In *Irvine's Estate*, 203 Pa 602 (53 A 502), the testator had by his will designated 3 persons to act as executors and trustees. They accepted the appointments, and in performing their duties apportioned the work among themselves. Subsequently 1 executor died, the others continuing to act. A question arose in the case as to whether they should be surcharged for moneys for which no account had been rendered or which had been lost to the estate by negligence. On appeal it was held that there was no question of bad faith or dishonesty, but that the executors had been guilty of laxity and inattention. It was pointed out, also, that the acts of each might have been known to the others by the exercise of reasonable diligence. In commenting on the duties of the executors, it was said (p 606):

"They were all bound to use diligence in protecting the estate against the careless or improper conduct of one of their number. The wise precaution of the decedent in providing for his estate the joint services of 3 men of special capacity, cannot be defeated by allowing them to escape responsibility by charging against each other the failure of duty which they were jointly and severally under obligations to perform."

It was accordingly held that the accountants should be surcharged with the losses occasioned by negligence on their part. As in the *Irvine Case*, it may well be said that in the case at bar the testator named the executors, his son and 2 friends, because he had confidence in them, and that he wished them to act jointly in performing the duties devolving on them. None could escape responsibility by leaving to the others the performance of the duties devolving equally on all three. Having accepted the appointment, each was bound to act accordingly, in good faith, for the best interests of the estate, and in

conformity with the will and the law under which the probate proceedings were had.

In view of the failure of the executors to settle the estate within the time limited by the will and expressly declared by the statute, the decision of the supreme court of Wisconsin in *Estate of Onstad: Nelson* v. *Onstad,* 224 Wis 332 (271 NW 652, 109 ALR 630) is in point. There it appears that the executrix had continued the testator's business for 2-1/2 years at a continual loss, and did not obtain an extension of time for closing the estate beyond the period limited therefor. The trial court, in approving the account of the executrix as filed, found that she had been negligent in failing to settle the estate as required but that no loss had occurred as a result of the delay. On appeal, the supreme court of the State concluded that this finding was not warranted by the facts. It was pointed out that a year and 4 months expired after the estate should have been settled before the executrix discontinued the business, which was constantly losing. This indicated that had the estate been promptly settled the loss from the business would have been materially less. Likewise in the case at bar, had the estate of John Tolfree been closed within the time limited by the statute, the loss resulting from the failure of the bank in which the estate money was kept would not have occurred. Each of the 3 executors was at fault in this respect. They were charged equally with the performance of duties imposed by law. None may escape liability on the ground that he left it to his co-executors to take action. It is likewise a noncontroversial principle that an executor who wrongfully suffers his co-executors to make an improper use of funds belonging to the estate, with a loss resulting to beneficiaries, is liable therefor. *Anspacher* v. *Utterback's Administrator,* 252 Ky 666 (68 SW2d 15). In view of the facts disclosed by the record in

the instant case, and in the light of the foregoing authorities, the loss to the estate and the beneficiaries under the will of John Tolfree should be surcharged against the 3 co-executors.

As above stated, the circuit judge surcharged interest against D. Eugene Tolfree alone, following in this respect the theory on which the loss due to the bank failure was surcharged. The question is presented whether interest on the bank fund, or any portion thereof, should be surcharged at all. The appellant United States Fidelity & Guaranty Company contends that this question should be answered in the negative, some emphasis being placed on the absence of testimony indicating the rate of interest that might have been received from investment of the funds. However, it is apparent that the money in the bank should have been distributed to the beneficiaries under the will. Had the estate been seasonably closed it may be assumed that distribution of assets, or of the proceeds therefrom, would have been made as required.

It thus appears that the beneficiaries entitled to the money that was in the bank account during the 3-year period before the institution closed its doors sustained injury because of the delay in closing and the failure to make proper distribution. Such being the situation, we think that the circuit judge was correct in holding that interest determined in the manner prescribed by the judgment entered should be surcharged. However, we are not in accord with the finding that the burden should rest entirely on co-executor Tolfree. For the same reasons that lead to the conclusion that the co-executors are equally responsible for the loss due to the bank failure they must be held responsible for the failure to perform the duty owing to the estate and to the beneficiaries thereof under the will of the testator. In other

words, such surcharge should be made against Gray and McGowan as well as Tolfree.

In view of the fact that the surcharging of the interest in question is predicated not on the failure to invest the fund but on the act of the co-executors in not disposing of it in accordance with the will and the statute, the conclusion of the Pennsylvania supreme court in *Gilbert's Appeal, supra,* is of interest. The following quotation from the opinion indicates the situation involved and the action with reference thereto (p 270):

"The court below reduced the amount of interest with which the auditor had surcharged the accountants, for the reason 'that administrators cannot always safely invest various amounts received from time to time.' There would have been more force in the reason assigned if such surcharge had been made because of the failure of the accountants to keep the funds of the estate invested. This, however, was not the ground of the surcharge. It was made for the reason that the administrators had allowed one of their number to mingle the funds of the estate with his own money and use it in his business. That such use was made of the money sufficiently appears from the evidence. The liability to account to the estate for interest is the legitimate conclusion from this fact."

It may be noted also that interest was surcharged in *Irvine's Estate, supra.*

In *In re Baldwin's Estate,* 311 Mich 288, 311, this Court, in considering whether an executor should be surcharged with interest, said:

"In the allowance of items of this character as a charge in favor of or against an executor a measure of discretion is vested in the trial court; and it is only when there appears to have been a manifest abuse of such discretion that the decision of the trial court will be overruled. Such was the holding in *Re*

*McNamara's Estate,* 166 Mich 451, which involved allowance of compensation for extraordinary services. In this jurisdiction the prevailing tendency seems to have been to surcharge an executor with interest on funds in his hands which in the exercise of reasonable care and diligence under all the attendant circumstances he might have invested in income-producing securities or deposits but failed to do so."

The Court then proceeded to point out that in each case the attendant circumstances must be considered. It appears from the proofs that because of the general economic conditions prevailing during the period of time involved in the case the executor had kept large amounts of cash in a safety-deposit box rather than on deposit. The circuit judge, hearing the matter on appeal from the probate court, refused to surcharge the executor with interest that might have been earned at the rate paid on savings accounts. This Court pointed out that there was an absence of satisfactory proof that the executor had failed to act in good faith and with reasonable diligence, or that he had used estate funds for his own benefit. Accordingly the Court declined to disturb the action of the trial judge in disallowing such item. It may be noted that in the proceeding now before us, while the co-executors are not shown to have acted in bad faith or dishonestly, nonetheless they failed to perform their duties with reasonable care and diligence. As before indicated, liability for the interest charged may properly be predicated on the failure to dispose of assets, make proper distribution to those entitled thereto, and seasonably close the estate.

This brings us to a consideration of the question as to the allowance of compensation to co-executor Gray because of services rendered by him to the estate. It will be recalled in this connection that for his services in operating the store until it was dis-

posed of in 1943 Gray was paid wages, or a salary. However, according to his testimony, he performed other services in connection with the assets, which presumably were for the benefit of the estate and the beneficiaries under the will. Such services were not in any way connected with the bank failure, and the amount allowed by the circuit judge in the final judgment was determined on the basis of fees that might properly have been allowed under the statute for services rendered during the 10-year period following the institution of the probate proceedings. On the record before us it may not be said that there was any abuse of discretion in the allowance of the amount specified in the judgment. Neither may it be said that the proofs were of such nature as to require a finding that the sum fixed is insufficient to constitute compensation to which Gray is entitled. He acquired no vested rights by virtue of statutory provisions in effect at the time of his appointment.

The case is remanded to the circuit court with directions to modify the judgment entered by surcharging the loss resulting to the estate because of the bank failure against the co-executors and, likewise, surcharging them with the interest as determined in accordance with the judgment.

DETHMERS, C. J., and SHARPE, SMITH, EDWARDS, KELLY, and BLACK, JJ., concurred.

BOYLES, J., took no part in the decision of this case.